[S. F. No. 9477.  In Bank.—January 18, 1921.]

## In the Matter of the Estate of HENRY MILLER, Deceased.

[1] INHERITANCE TAX — COMPUTATION — NET CLEAR VALUE OF BENE-FICIAL INTEREST.—While the California Inheritance Tax Act contains no provision as to how the principal upon which the tax is to be computed is to be ascertained other than that it is designated as the clear market value of the beneficial interest transferred, and the only provisions for deductions are for the deduction of debts and executor's commissions, the plain purpose of the act is that the clear market value of such interest should be its net clear value, and therefore expenses of administration are to be deducted.

[2] ID.—NATURE OF INHERITANCE TAX—LAW OF CALIFORNIA.—The California inheritance tax is a succession tax on the beneficial interest of each beneficiary or heir computed on its net clear value and chargeable against it.

[3] ID.—NATURE OF FEDERAL TAX UNDER ACT OF 1916.—The federal tax under the Revenue Act of 1916 (39 U. S. Stats. at Large, 777–780) is not a succession tax, but an estate tax imposed upon the net estate of the deceased as a unit.

[4] ID.—COMPUTATION OF STATE TAX—DEDUCTION OF FEDERAL TAX.— The state tax being a succession tax upon what the transferee receives and the federal tax being an estate tax upon what the decedent leaves, the federal tax must be first deducted in order to determine the amount upon which the state tax should be levied.

[5] ID.—NATURE OF INHERITANCE TAX LAW OF NEVADA.—The inheritance Tax Law of the state of Nevada (Stats. 1913, p. 411) is a succession tax on what the transferee receives.

[6] ID.—STOCK IN NEVADA CORPORATION — TRANSFER IN CONTEMPLATION OF DEATH—COMPUTATION OF TAX—DEDUCTION OF NEVADA TAX.—In computing the inheritance tax for this state upon stock in a Nevada corporation transferred in contemplation of death by a resident of this state, the amount of the Nevada inheritance tax is to be first deducted.

[7] ID.—TRANSFER PRIOR TO FEDERAL AND NEVADA STATUTES—SUBSEQUENT DEATH OF TRANSFEROR—DEDUCTION OF TAXES.—In computing the inheritance tax upon a transfer made *inter vivos* and in contemplation of death, creating a future, contingent, or limited estate depending on the death of the transferor, the value of such future contingent or limited estate is to be determined as of the time of death of the transferor under sections 5 and 15 of the Inheritance Tax Law (Statutes of 1911, page 713).

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Matthew Brady, District Attorney, Robert A. Waring, Inheritance Tax Attorney, H. C. Lucas, Assistant Inheritance Tax Attorney, and Hartley F. Peart for Appellants.

Edward F. Treadwell and Forrest A. Cobb for Respondents.

OLNEY, J.—This is an appeal by the state and the state controller, in whose charge is the matter of collecting inheritance taxes, from a portion of a common order and judgment, entered in three different proceedings, determining and fixing the inheritance taxes payable upon the death of one Henry Miller. Miller was a resident of California and died, testate, October 14, 1916. On April 17, 1913, he had executed a deed of trust to Nellie Miller Nickel and J. Leroy Nickel,

7. Validity of statute levying tax upon conveyance in contemplation of or to take effect at death, note, Ann. Cas. 1914D, 1183.

Succession tax upon gift in contemplation of death, notes, 14 Ann. Cas. 109; Ann. Cas. 1915B, 1089; 18 L. R. A. (N. S.) 458; 46 L. R. A. (N. S.) 790.

assigning to them, as trustees, approximately one hundred and twenty thousand shares of the capital stock of Miller and Lux Company, a Nevada corporation. It is conceded that the transfer was made in contemplation of death and is subject to tax under our inheritance tax law in effect at the time of transfer. The controversy is solely as to the amount of the tax.

Immediately prior to the transfer, but not going into effect until afterward, the state of Nevada adopted an inheritance tax law (Stats. Nev. 1913, p. 411), and thereafter, and prior to Miller's death, the United States adopted the existing federal tax act (Revenue Act of 1916, title II, 39 U. S. Stats. at Large, 777–780 [U. S. Comp. Stats., secs. 6336½a–6336½m]). Under these laws, the United States makes claim for taxes in the amount of nearly four million dollars on the transfer mentioned, and the state of Nevada makes claim for some forty-eight thousand dollars. The validity of both these claims is in contest and as yet undetermined. Such being the situation, the trustees named, when it came to fixing the inheritance taxes on the transfer under the California law, claimed that in case the claims of the United States and Nevada should be finally upheld, the amount of those claims, as established, should be deducted from the value of the stock transferred in order to obtain the value upon which the California tax should be computed. The claim of the state and the state controller, on the other hand, was that no such deduction should be made. The lower court sustained the contention of the trustees, and the order or judgment appealed from provides, among other things, for such deduction to the extent that the validity of the claims of the United States and Nevada may be finally established. It is from this portion of the order and judgment that the appeal is taken.

We are, of course, not concerned here with the validity of the claims of the United States and Nevada. We are concerned only with the result upon the amount of tax due the state of California in case those claims are valid and finally so established. For the purposes of discussion, then, we may assume their validity. It will also simplify somewhat the discussion of the primary question involved if we assume that it is not material that the transfer was made prior to Miller's death and prior to the going into effect of both the Nevada and the United States tax acts. Our discussion will, there-

fore, for the time being, be on the basis of a transfer by inheritance or will occurring upon Miller's death. It should also be noted that shortly after Miller's death, the California law was amended so as to provide expressly that no deduction should be made because of the federal tax. This amendment, however, very plainly cannot affect the question as to what was the law before its adoption, and that question must be determined as if the amendment had not been made.

[1] The California act [Stats. 1911, p. 713] contains no provision as to how the principal upon which the tax is to be computed is to be ascertained other than that it is designated as the "clear market value" of the "beneficial interest" transferred, and that there are provisions which plainly imply that the decedent's debts and the commissions of executors are to be deducted to ascertain this "clear market value." In this connection it should be noted that this designation of the principal upon which the tax is to be computed is one common to the inheritance tax acts of many other states and in particular is the designation in the acts under consideration in most of the decisions from other states which we subsequently cite. But while this is the designation in our act, and the only provisions for deductions are for the deduction of debts and executors' commissions, the plain purpose of the act was that the clear market value of the beneficial interest transferred should be its net clear value. This has been the construction given it in actual administration and by the courts (*Estate of Kennedy,* 157 Cal. 517, [29 L. R. A. (N. S.) 428, 108 Pac. 280], *Estate of Hite,* 159 Cal. 392, [Ann. Cas. 1912C, 1014, 32 L. R. A. (N. S.) 1167, 113 Pac. 1072]); and the deduction of expenses of administration, sums allowed by way of family allowance, and the value of property set aside as a family homestead, as well as of debts, has been sanctioned and has been commonly made. The primary question, or, rather, questions, in the present case are, therefore: (1) In determining the net clear value of the beneficial interest transferred, should the federal estate tax be deducted, and (2) for the same purpose should the Nevada inheritance tax on the stock of a Nevada corporation, owned by a resident of this state at the time of his death, be also deducted? These two questions are not the same, and we shall consider first that concerning the federal tax.

[2] The solution is found in the different natures of the two taxes, the California tax and the federal tax. The California tax is a succession tax, a tax on the beneficial interest of each beneficiary or heir. If there be more than one beneficiary or heir, there is a separate tax on the interest of each, computed on its net clear value, and chargeable against it. The provisions of the law are substantially the same as those of the previous Inheritance Tax Act of 1905 (Stats. 1905, p. 341), which was under consideration in *Estate of Kennedy,* previously referred to. The question there presented was whether a homestead set apart for the widow of the testator out of his estate in the course of probate should be deducted in order to determine the amount upon which she, as residuary legatee, should pay the inheritance tax. It was held that it should be deducted because of the nature of the tax, the court saying (page 526): "The provisions of our tax act clearly show that the tax imposed thereby is one solely upon the devisee, legatee, or heir, and one upon him only as to such property as he actually takes on distribution as devisee, legatee, or heir. It would appear to be a most absurd and inequitable provision that imposed a tax on one for the privilege of succeeding as heir, devisee, or legatee to certain property of the decedent, where the very property to which he is so held to succeed is lawfully diverted by the probate court to other purposes and never can be distributed to him."

[3] The federal tax under the act of 1916, on the other hand, is not a succession tax, but an estate tax, not a tax on what comes to the beneficiaries or heirs, but upon what is left by the decedent. In this respect it differs from the legacy tax imposed by the United States War Revenue Act of 1898, [30 Stats. 448]. The act of 1916 entitles the tax an "estate tax" and in terms imposes it upon the net estate of the decedent as a unit. It is not apportioned among the various transferees and bears no relation to the separate amounts which they are to receive. The distinction between a succession tax and an estate tax is a recognized distinction, and, so far as we are aware, it has been held without exception that the federal tax, under the act of 1916, is of the latter character. It is not possible, in our judgment, to take any other reasonable view of it.

The nature of the federal tax is discussed in *In re Roebling's Estate,* 89 N. J. Eq. 163, and it is said (page 166, [104 Atl.

295, 296]): "To be more precise, it is imposed upon the *estate*, transferred by death, and not upon the *succession* resulting from death. The distinction is well defined and recognized in countries where both kinds of tax exist. The federal tax resembles the probate duty of the act of 1862, chapter 119 (12 U. S. Stats., p. 483), which was payable by the executor out of the estate, while the legacy duty therein provided for (at page 485) was payable by the beneficiaries. The tax occupies the same field of death duty as does the 'Estate Tax' in England. By the Finance Act of 1894 an estate duty is levied upon the principal value of all property, real or personal, which passes on the death of a person and is imposed upon the estate and is payable by the executor as an administration expense. In addition to this tax, there is also a legacy tax, and a succession duty upon the realty, payable by the recipients. Speaking of the death duty, Mr. Hanson in his opening chapter—Hans. D. D. (6th ed.)—says:

" 'The new duty imposed by the Finance Act, 1894, and called estate duty, supersedes probate duty; but the key to the construction of the Finance Act, 1894, and the amending act lies in remembering that the new estate duty, although it is leviable on property which was left untouched by probate duty, such as real estate, yet is in substance of the same nature as the old probate duty. What it taxes is not the interest to which some person succeeds on a death, but the property in respect of which an interest ceased by reason of the death. Unless this principle is clearly kept in view, the mind is constantly tempted by the wording of the act to revert to principles of succession duty, which have no real connection with the subject.' "

See, also, to the same effect, *Corbin* v. *Townshend,* 92 Conn. 501, [103 Atl. 647]; *Knight's Estate,* 261 Pa. St. 537, [104 Atl. 765]; *People* v. *Pasfield,* 284 Ill. 450, [120 N. E. 286]; *State* v. *Probate Court,* 139 Minn. 210, [126 N. W. 125]; *People* v. *Bemis,* 68 Colo. 48, [189 Pac. 32]; *State* v. *First Calumet etc. Co.* (Ind.), 125 N. E. 200, and *Northern Trust Co.* v. *Lederer,* 257 Fed. 812, affirmed in *Lederer* v. *Northern Trust Co.,* 262 Fed. 52.

[4] The state tax, then, being a succession tax, a tax upon what the transferee receives, and the federal tax being an estate tax, a tax upon what the decedent leaves, there would seem to be no escape from the conclusion that the federal tax

must be deducted in order to determine the amount upon which the state tax should be levied, since it is plain that what the transferee receives is only the portion of what the decedent left which remains after the federal tax is taken. We might apply here the language from *Estate of Kennedy,* already quoted, that "It would appear to be a most absurd and inequitable provision that imposed a tax on one for the privilege of succeeding as heir, devisee, or legatee to certain property of the decedent, when the very property to which he is so held to succeed is lawfully diverted by the probate court [in this case by operation of law] to other purposes and never can be distributed to him." We might also say in the language of *People* v. *Pasfield, supra* (284 Ill. 454, [120 N. E. 288]): "The legatees and distributees cannot in any sense be held to have 'received' any part of the duty that is paid to the government by the executor or trustee or administrator as such estate tax, and there is no language in the act that will permit a construction that the duty is levied upon each share of the legatees or distributees of the decedent, as was given the federal act of 1898 by the court in *Knowlton* v. *Moore,* 178 U. S. 41, [44 L. Ed. 969, 20 Sup. Ct. Rep. 747, see, also, Rose's U. S. Notes]. The Federal Estate Tax Act of September 8, 1916, necessarily operated to lessen, by the amount of such tax, the clear value of the beneficial interest which passed to the heirs and legatees in the instant case and prevented their receiving any part of that tax, and the ruling of the county court that the same should be deducted before computing the state tax was correct."

The identical question presented here as to whether the federal tax should or should not be deducted in computing a succession tax has been presented in a number of other jurisdictions, and the overwhelming weight of authority is that it should be deducted. It was so held in all of the cases we have cited above as to the nature of the federal tax. The discussion of the question by many of them is full and convincing and makes unnecessary here anything more than the rather brief discussion we have given to it.

We are cited to but three authorities as holding to the contrary. While one of them is not in point, the other two are, and it may not be amiss as to the latter to point out wherein we think they are in error. The case to which we have referred as not in point is *In re Sanford's Estate* (Iowa), 175

N. W. 506. It is not in point for the reason that the Iowa statute, unlike ours, particularly specifies what should be deducted before computing the tax, and that nothing else should be deducted, and the federal tax did not come within any of the deductions authorized. It is upon this peculiarity of the statute that the decision goes.

The two cases referred to which are in point are *Estate of Sherman,* 179 App. Div. 497, [166 N. Y. Supp. 19], affirmed in 222 N. Y. 540, [118 N. E. 1078], and *Estate of Bierstadt,* 178 App. Div. 836, [166 N. Y. Supp. 168], which may be considered as one, and *In re Week's Estate,* 169 Wis. 316, [172 N. W. 732]. The New York case or cases go apparently upon the ground that the federal tax is unconstitutional and upon the authority of *Estate of Gihon,* 169 N. Y. 443, [62 N. E. 561]. The question as to the constitutionality of the federal tax is not presented here, and, as we have said, its validity must be assumed. As to the authority of the *Estate of Gihon,* the two later New York decisions under discussion fail to recognize the difference between the federal legacy tax under the law of 1898, which was involved in *Estate of Gihon,* and the federal estate tax under the law of 1916, which was involved in them. The legacy tax of 1898 was a succession tax, as its name would indicate, and it is upon this fact that the decision in *Estate of Gihon* is rested. It is said: "In our judgment the vital error in this argument [the argument for the deduction of the federal legacy tax] lies in the assumption that the 'taxes are primarily payable out of the estate.' The federal tax is of exactly the same nature as the state tax—a tax not on property but on succession; that is to say, a tax on the legatee for the privilege of succeeding to the property." The decision, therefore, cannot be considered as authority for not deducting an estate tax, and affords no justification for the later cases in so holding. On the contrary, the implication from it is that such a tax should be deducted.

As to the Wisconsin case, it proceeds solely upon the proposition that the statute makes no express provision for any deduction whatever. It recognizes the fact that this ground would forbid a deduction of any sort from the gross value of the estate left by the decedent, even a deduction of expenses of administration, and yet it also recognizes that it was the established practice in Wisconsin to make a deduction for expenses of administration, and by expressly refusing to dis-

turb that practice, confirms it. We cannot follow it to such inconsistent and irreconcilable results. It is the settled law of this state that the inheritance tax is imposed upon the net clear market value of what the transferee receives, and that to ascertain this the value of what he does not receive, in contemplation of law, must be deducted from the value of what the decedent left. The application of this principle plainly requires the deduction of the federal estate tax.

[5] As to the deduction of the Nevada tax, the question is quite different and its correct answer by no means so certain. Very little attention is paid to it by counsel on either side, undoubtedly because of the small amount of tax claimed as compared with the amount of tax claimed by the United States. But the Nevada tax, like our own, is a succession tax, a tax on what the transferee receives, and it is quite permissible to have two taxes on the same thing, and ordinarily where such taxes are levied, neither is to be deducted in computing the other.

In support of their position, counsel for the trustees advance the reasoning and authority of *Corbin* v. *Townshend,* 92 Conn. 501, [103 Atl. 647], and *Van Beil's Estate,* 257 Pa. St. 155, [101 Atl. 316]. That reasoning is that the tax of the foreign state "must be paid before the executor or administrator can reduce the [foreign] bonds or stock to possession These cannot be transferred until the [foreign] state tax is paid and the value of the security so transferred is reduced by the amount of the tax which the executor or administrator has had to pay" (*Corbin* v. *Townshend, supra*). This reasoning is hardly sufficient. The stocks and bonds cannot, of course, be transferred until the tax is paid and the administrator or executor must pay it. But this is true of the tax by the state of the decedent's domicile as well. The point is that while each tax must be paid, and paid by the administrator or executor, both are a tax on the same thing, the interest of the transferee, and both are chargeable against it and finally paid out of it. If the two taxes were levied under concurrent or equal authority, we would have little hesitation in holding that, without express provision to the contrary in the statute, neither should be deducted in computing the other. Such was the situation and ruling in *Estate of Gihon, supra,* where the two taxes involved were the federal legacy tax, under the law of 1898, and the state succession tax. It is

manifest that in such a case both the federal government and the estate have equal and concurrent authority, and no reason appears why the tax of one should be deducted in computing the tax of the other. *Hooper* v. *Shaw,* 176 Mass. 190, [57 N. E. 361], holds to the contrary, but we fail to appreciate the reasons it advances for so doing.

[6] But there is, we believe, a difference between two succession taxes, one federal and one state, and two succession taxes, both state, one imposed by the state having actual control over the subject matter of the transfer, and the other imposed by the state of the domicile of the decedent. The two states do not have equal and concurrent authority in such a case. The authority of the state having actual control of the subject matter, either because it is personal property within its limits or because, as in this case, it is the stock of one of its corporations, is, of necessity, the superior. The state of the decedent's domicile can deal with the property only after the requirements of the state of its actual situs are satisfied. Putting it another way and concretely, the stock of Henry Miller in the Nevada corporation comes into his California estate, there to be administered upon and taxed, only after the requirements of Nevada are complied with, and the only thing over which California secures authority is what remains after Nevada has taken its tax. It would seem reasonable to say, under such circumstances, that so far as California is concerned, the value of the interest transferred by death, or in contemplation of death, is the value of the corporate stock after the Nevada tax had been paid. This, we believe, is the justification of *Corbin* v. *Townshend* and *Van Beil's Estate,* which hold that the foreign tax should be deducted. It is a reason hinted at in both and may in fact be the thought which underlies them, too briefly expressed to be entirely clear to us. The *Matter of Penfold,* 216 N. Y. 171, [110 N. E. 499], is a decision to the contrary, but it proceeds solely on the authority of *Estate of Gihon,* which, because of the distinction stated, we do not think in point. At any rate, for the reasons given, we are ready to follow the authority of *Corbin* v. *Townshend* and *Van Beil's Estate,* and to hold in this case that the Nevada tax should be deducted.

[7] There remains only the question as to whether or not the conclusion so reached as to both the federal and the Nevada tax is affected by the circumstances that the particular trans-

fer under consideration was not made by death, but *inter vivos* and in contemplation of death only, and that when the transfer was made neither the federal nor the Nevada acts was in force. It is the settled law in this state, as well as in other jurisdictions, that when a transfer is made *inter vivos* its liability for tax is determined by the law then in effect, even though the tax be not payable until the death of the transferor. (*Hunt* v. *Wicht,* 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639]; *Estate of Felton,* 176 Cal. 663, [169 Pac. 392]; *Nickel* v. *State,* 179 Cal. 126, [175 Pac. 641].) With this proposition as a premise, counsel for the state argue that upon the making of the transfer here involved there vested in the state the right to the tax imposed by the statute then in force, and that this right cannot be divested by a subsequent statute of another jurisdiction. This we may concede, but conceding it, the question still remains as to the method of computing the amount of the tax, the right to which so vested. This is the real question in the case. It is evident that if the tax is by our statute to be computed on the value of the property as of the date of transfer, then to permit this value to be reduced by the amount of taxes imposed subsequently by other sovereignties would be to reduce the tax from what our statute provides shall be collected. On the other hand, if our statute provides that the valuation is to be made as of the date of death of the transferor, then the valuation which our own statute calls for is one that must take into account valid burdens then existing upon the beneficial interests transferred and which have the effect of taking from the beneficiaries a portion of those interests, and it is wholly immaterial that such burdens were or were not imposed at or prior to the time of transfer. They exist at the time of death when the valuation is to be made, and reduce the value as of that time, and it is this value which our statute calls for. The question, therefore, presents itself as to whether under our own statute the tax in this case is to be computed upon the value of the beneficial interests transferred as of the date of transfer, or as of the date of the death of Miller, the transferor.

When the dates of transfer and death are the same, that is, in the usual case where the transfer is by death, the question does not arise, and the statute plainly contemplates a valuation as of the joint date of transfer and death. There

is no declaration in the statute as to what shall be the rule
when the dates are not the same, i. e., when a taxable transfer
is made prior to the death of the transferor. The statute,
however, does contain a provision which closely approaches a
declaration that the valuation of future, contingent, or limited
estates, created by the transfer, shall be as of the date of
death. Such estates were created by the transfer here in-
volved. The beneficial interests under the trust were a life
estate in Miller, with remainder over to his daughter and her
husband for their lives and to the survivor of them for his
or her life, with remainder over in fee. The provision of
the statute referred to is the portion of section 5 reading (the
italics being ours) : "When any *grant, gift,* legacy, devise or
succession upon which a tax is imposed by section one of
this act shall be an estate, income, or interest for a term of
years, or for life, or determinable upon any future or con-
tingent event, or shall be a remainder, reversion, or other
expectancy, real or personal, the entire property or fund by
which such estate, income, or interest is supported, or of
which it is a part, shall be appraised *immediately after the
death of the decedent,* and the market value thereof de-
termined, in the manner provided in section fifteen of this
act . . ."

This provision is plainly one for the valuation of future,
contingent, or limited estates. It appropriately requires an
appraisal, both of the property as a whole out of which such
estates are carved, and of the particular estates into which
it is carved. Grammatically, the "market value thereof,"
as those words are used, would refer to the market value of
the property as a whole, but a consideration of the purpose
of the provision and of the character of the estates with
which it is dealing makes it evident that it is the market
values of the particular estates which are to be determined
in the manner provided by section 15. It is these values
upon which the tax must be computed, and the method of
their ascertainment is what the section is seeking to provide
for. Section 15 in turn appropriately provides that the value
of future, contingent, or limited estates is to be determined
in accordance with the mortality tables. The provision of
section 5, particularly significant upon the point under dis-
cussion, is that the appraisal in such cases, whether the tax-
able transfer be by death or *inter vivos,* be made "imme-

diately after the death of the decedent." This, of course, is literally a provision as to the time of actually making the appraisal, not as to the time as of which it shall be made. It is also true that it is possible, when a transfer has been made preceding the death of the transferor, to appraise estates dependent upon his death as of the date of transfer and not as of the date of actual death, although that death has already taken place. For example, in this case it would be possible to appraise the life estate of Miller's daughter and her husband, and of the subsequent remainder in fee, by going back to the date of transfer, disregarding the actual date of Miller's death and taking in place of it the date of his probable death, according to the mortality tables, and upon this basis computing the value of the life estate which he provided for himself and of the life estates and the remainder which were to follow. But such method would not be a natural or reasonable one. At the time when the statute requires the appraisal to be made, the death upon which the estates to be valued depend has actually occurred, and the natural and reasonable method of computing their value would be to take the actual date of death, rather than one determined by mortality tables, which might be very different and the use of which would produce a correspondingly different result from the existing and known actuality. We think it fairly certain, therefore, that when the statute provides that in such cases as the present the appraisal is to be made immediately after the death of the transferor, it contemplates and requires that the appraisal be on the basis of the actual date of his death and, therefore, of necessity, as of that date.

We should, perhaps, say that the conclusion so reached, based, as it is, on the particular provisions of section 5 as to the appraisal of future, contingent, or limited estates, does not involve a determination of the question as to whether it is the date of transfer or the date of death of the transferor as of which the appraisement should be made in cases of taxable transfers *inter vivos* which do not create estates of that particular character. That question is not involved here, and should not be determined. It is worthy of note, however, that in a case recently argued before us, where the question is involved, the position of the state, contrary to that which it must necessarily take here, was that the property was to be valued as of the date of death of the transferor,

and also that it was conceded on behalf of the transferee, who was contending that the valuation there should be as of the date of transfer, that if the estates created had been future, limited, or contingent estates, section 5 would require their appraisal as of the date of the death of the transferor.

Since, then, the appraisal in this case must be made under our statute as of the date of Miller's death, and at that time the federal and Nevada statutes had gone into effect, and the net clear value of the beneficial interests transferred had been reduced by the amounts of any valid taxes under those statutes, it is this reduced value which our statute prescribes shall be taken as the basis of computation. It follows that it is not material that the transfer was made before the going into effect of the federal and Nevada statutes, and that the conclusion reached upon a discussion of the case as one of a transfer by death remains unaffected.

Judgment and order affirmed.

Shaw, J., Sloane, J., Wilbur, J., Lawlor, J., Angellotti, C. J., and Lennon, J., concurred.