## ROGAN v. TAYLOR.
## TAYLOR v. ROGAN.
### No. 10301.

Circuit Court of Appeals, Ninth Circuit.
June 11, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., Tax Division, Sewall Key, J. Louis Monarch. Maryhelen Wigle and Carleton Fox, Sp. Assts. to the Atty. Gen., and Leo V.

Silverstein, U.S. Atty., E. H. Mitchell, Asst. U.S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for Collector.

W. M. Greathouse, of Los Angeles, Cal., for taxpayer.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

WILBUR, Circuit Judge.

Alfred G. Taylor, executor of the estate of Emma A. Bailey, deceased, sued Nat Rogan, Collector of Internal Revenue, in the United States District Court for the Southern District of California for refund of a portion of the estate tax paid. Recovery was allowed in part and denied in part, and both parties appeal. The questions involved on both appeals concern the determination of the amount of the estate which is subject to the applicable federal estate tax (Revenue Act of 1926, § 301, 26 U.S.C.A.Int.Rev.Acts, page 225; Revenue Act of 1932, § 401, as amended by Revenue Act of 1935, § 201, 26 U.S.C.A. Int.Rev.Acts, page 573).

Deduction on Account of Residuary Charitable Bequests.

■ Section 303 of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 232, provides that in determining the amount of the estate subject to the federal estate tax there may be deducted from the gross estate the amount of bequests payable to charitable organizations therein described. The difficulty in applying this provision in the case at bar arises from the fact that certain of the charitable bequests are residuary, five twenty-thirds of the residue of the estate being bequeathed to charities. The federal estate tax is, as its name indicates, a tax upon the estate as a whole and is payable by the executors, but how its burden is to be apportioned as among the beneficiaries of the estate is a question to be determined by the law of the jurisdiction in which the estate is being administered. Riggs v. Del Drago, 317 U.S. 95, 62 S.Ct. 109, 87 L.Ed. ——, 142 A.L.R. 1131. If each legatee is required to pay his proportionate share as under the New York statute considered in that case, then a residuary bequest to charities presents no unusual problem. If, however, the federal tax must be paid from the general estate, like other administration expenses, the payment of the tax upon the taxable portion of the estate will operate to reduce the non-taxable residuary gift to charity. The question then arises as to whether the deduction of charitable bequests allowed by § 303, supra, is a deduction of residue as computed before it is diminished by payment of the federal tax or afterward. The former course, adopted by the lower court in the case at bar, presents the anomalous result of allowing deduction from the gross estate, as a gift to charity, of a sum which in fact goes not to charity but to the Collector of Internal Revenue. The alternative course presents the practical problem of using the federal tax itself as an element in computing the taxable estate, upon which the amount of the tax will in turn depend. The problem of determining the federal estate tax in the latter case may be solved readily by algebraic means.

It was originally held, in Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564, in February 1924, that when there was a bequest of the entire residue to charity, § 303, supra, permitted deduction of the entire residue, undiminished by the federal estate tax, in determining the taxable estate. Thereafter § 303, supra, was amended by § 807 of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 235, to add a provision dealing with this subject, as follows: "If the tax imposed by section 301, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate * * *."

The first question for determination in arriving at the amount of the residue of the estate is to determine whether the federal estate tax is payable from individual legacies or from the estate as a whole. If the latter, the burden of this payment would fall upon the residuary legatees. Where this burden falls is a question to be determined by the law of the state in which the estate is administered. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87

L.Ed. ——, 142 A.L.R. 1131, supra. The question has recently been before the Supreme Court in an action arising in the state of Illinois. Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. ——, decided January 11, 1943. It was held that under the law of Illinois the federal estate tax is payable from the general estate, thus reducing the amount of the residuary charitable legacies and that § 303, supra, as amended only allows deduction of such legacies as so reduced. That case is controlling as to the case at bar upon this point unless the law of California differs from that of Illinois. The taxpayer concedes in his reply brief filed subsequent to the argument, that: "Since the Supreme Court has ruled [in Harrison v. Northern Trust Co., supra] that the effect of the Illinois law, as established by the Pasfield case, [People v. Pasfield, 284 Ill. 450, 120 N.E. 286] is to reduce the amount of residuary bequests to charities, and the 1935 Inheritance Tax Act of California provides that federal estate taxes must first be deducted before computing inheritance taxes, the conclusion is inescapable in the instant case that the residuary bequests to charities must be reduced by the federal estate tax in accordance with the law of this state."

The taxpayer, however, further contends that the 1935 Inheritance Tax Act in California "provides precisely how the federal estate tax may be computed in order to reach the net estate to be charged with [California] inheritance taxes," citing § 2, subsec. (11) (e), of the 1935 California Inheritance Tax Act. Act 8495, Deering General Laws for 1937, p. 3953, quoted in the margin.[1] The taxpayer states: "Since the thrust of California law is to deduct the federal estate tax, as determined by the Inheritance Tax Appraiser of this state, the Collector in ascertaining the net taxable estate, may not decrease the residuary share of charities by deducting from the gross estate a larger federal estate tax than the state law permits."

He further states that the Collector deducted from the gross estate the federal estate tax in amount of $34,511.15, whereas the Inheritance Tax Appraiser of California deducted only $20,926.69. Of course the state of California cannot determine the amount of the federal estate tax to be collected by the federal government. That is determined by the law of the United States. The California statute on which the taxpayer relies does not provide (as it could not) how much the federal estate tax shall be, nor does it provide (as it could have done) how its burden shall be apportioned among the beneficiaries of the estate. It is merely a provision that a particular deduction from the gross estate will be allowed in determining the amount of the estate subject to the state inheritance tax. That deduction is designed to correspond, with certain limitations, to the amount of the federal estate tax; but those limitations in no way restrict the independent taxing power of the federal government. There is, moreover, nothing in the statute cited that in any way modifies the otherwise established law of California as to distribution among beneficiaries of the estate of the burden of the federal estate tax. The general rule, when the law of the state does not provide otherwise, is that this burden rests, like other administration expenses, on the general estate and is not apportioned among the legatees. Y.M.C.A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed 558. See cases on this point collected in a note to Riggs v. Del Drago, supra, 142 A.L.R. 1135, at page 1137. This rule is recognized in California. In re Estate of Miller, 184 Cal. 674, 678-680, 195 P. 413, 16 A.L. R. 694, where the court quoted with approval People v. Pasfield, 284 Ill. 454, 120 N.E. 286, supra.

We hold that under the decision of the Supreme Court in Harrison v. Northern Trust Co., supra, the residuary legacies to charity in the case at bar are reduced by their proportion (5/23) of the federal estate tax payable from the gross estate. In com-

1 "(11) Deductions from appraised value. In determining the market value of the property transferred, the following deductions, if obligations of the decedent or his estate and paid by the estate or transferee, and no others, shall be made from the appraised value thereof: * * *

"(e) The amount due or paid the government of the United States as a Federal inheritance or estate tax; provided, however, that the amount of such tax allowable herein as a deduction shall be limited to a computation thereof (commencing at the primary rates) made by the acting State inheritance tax appraiser upon his own valuations of that portion of such property only, the transfer of which is taxable under the provisions of this act, by applying to such valuations the exemptions and rates of the Federal inheritance or estate tax in force at the date of decedent's death."

puting the federal estate tax the deductions from the gross estate allowed by 26 U.S.C.A.Int.Rev.Acts, page 232, § 303, supra, because of the residuary · charitable bequests must be reduced accordingly. The lower court erred in holding to the contrary.

### Refund on Account of Expenses of Administration.

The executor's appeal arises from the refusal of the lower court to allow deduction because of certain expenses of administration incurred after the tax was paid, in ascertaining the amount of the residuary legacies. The amount of such expenses was stipulated, as was the fact that no deduction has heretofore been allowed on account of them. We have only to consider whether allowance of the deduction must be denied because of defects in the procedure by which the executor has sought to procure it.

Section 319(b) of the Revenue Act of 1926, supra, as amended by § 810(a) of the Revenue Act of 1932, supra, 26 U.S.C.A. Int.Rev.Acts, page 259, provides that claims for refund of taxes paid must be presented to the Commissioner within three years after payment of the tax, and that refund may not exceed the amount of tax paid within three years of filing of the claim, or three years of allowance of the refund, if no claim was filed. Section 3226, Revised Statutes, as amended by § 1103 of the Revenue Act of 1932, supra, 26 U.S.C.A. Int.Rev.Acts, page 652, provides that no suit for refund shall be brought until a claim has been filed in accordance with the Treasury Regulations, and suit shall not be begun until six months after filing such claim, unless the Commissioner renders a decision on the claim sooner. Treasury Regulations 80 (1934 edition), issued under the Revenue Acts of 1926 and 1932, provide by Article 99 that a claim for refund must set forth in detail each ground upon which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.

We shall now examine the facts of the present case in the light of these applicable statutes and regulations.

The tax in question was paid on June 1, and December 3, 1937. On February 25, 1938, a claim for refund was filed, based on the valuation of certain assets and the method of computing deductions for charitable bequests. This claim also stated:

"Moreover, when a final settlement is reached herein deponents will claim further amounts as deductions by reason of the payment of further premiums on executors' bonds and further allowances made by the Probate Court on account of executors' and attorneys' fees, all of which have not been considered prior to this time in allowing deductions for cost of administration."

On April 16, 1938, the Commissioner gave notice of refund and refunded $2,114.44, based in part on allowance of further deduction of $649.97 for executors' and attorneys' fees.

The present action was filed on April 24, 1940, based on the claim of February 25, 1938, supra, for refund of various amounts not including any allowance for deduction of further administration expenses. The complaint was amended March 6, 1941, to allege further administation expenses of $1,605.30, asking refund based upon such payment and upon further administration expenses yet to be incurred. The allegations of the amendment the Collector denied for lack of information or belief.

On November 28, 1941, a claim was presented to the Collector for refund based upon the payment of $7,253.23 further administration expenses, which included the item of $1,605.30, supra. The parties stipulated that this amount was correct and that no allowance had been made on account thereof, and on the day of trial the complaint was amended to ask for allowance based on this full amount. No answer to that amendment was filed.

After the case was submitted to the trial court, the Collector made for the first time the contention that refund on account of such further expenses of administration must be denied because no timely claim was made on that ground. The trial court sustained this position.

The executor contends that his claim of February 25, 1938, although possibly insufficient in form to comply with the regulations, was nevertheless enough to inform the Collector that further administration expenses would be claimed, and was capable of amendment even after expiration of the three year period for filing an original claim. This argument is based on such authorities as United States v. Kales, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132, where the court said: "A notice fairly advising the Commissioner of the nature of the taxpayer's claim, which

the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. * * * This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such."

■■ We consider that principle inapplicable here because the claim of February 25, 1938, did not refer to any then existing right to refund on account of administration expenses or purport to be a present claim regarding them. It is true that the original claim in the case of United States v. Kales, supra, merely stated a right which would be asserted on the happening of a future contingency, but the right itself, as the court was at some pains to point out, was presently existing when the claim was filed. We consider the present case indistinguishable from Ordway v. United States, 2 Cir., 37 F.2d 19, 21, where it was held that a mere assertion that administration expenses subsequently incurred would be claimed as a basis for refund was not a claim within the meaning of the statute and so not capable of amendment after expiration of the statutory time for making a claim. The executor attempts to distinguish the Ordway case by stressing the court's statement that "if any claim had * * * arisen" at the time the first claim was filed, defects in form might be overlooked. He points out that in the case at bar refund was actually allowed on account of $649.97 additional administration expenses, as showing that "some claim" had arisen when the claim was first filed. We cannot accept that distinction. We hold that a claim can be effective only in so far as it asserts a then existing right, and cannot by subsequent amendment be extended to include rights arising after the time for filing claims has expired. We do not mean to say that a present claim may not be predicated · upon a , present estimate of future expenses, a question not now before us.

■■ The executor next contends that the Collector, by proceeding to trial without making objection to the sufficiency of the claim, waived all objections thereto. It is true that defects in form may be waived. United States v. Kales, 314 U.S. 186, 197, 62 S.Ct. 214, 86 L.Ed. 132. Failure to file a claim, however, may be waived only during the period in which a claim might be filed. United States v. Garbutt Oil Co., 302 U.S. 528, 534, 535, 58 S.Ct. 320, 82 L.Ed. 405. Here the asserted waiver by silence could only have occurred after March 6, 1941, when the complaint was amended to raise for the first time the question of administration expenses. That was more than three years after the last tax payment. It follows that the time had then expired within which the Collector had power to waive failure to file a claim. It is therefore unnecessary to consider whether his acts were otherwise such as would constitute a waiver.

Since no claim for refund on account of further administration expenses was filed within the statutory time, the District Court correctly decided that it was without power to allow a refund because of them.

The executor claims that this holding will merely result in putting him and the government to the expense and trouble of recontesting the merits in a proceeding for redetermination before the Tax Court. The fact that a remedy does or may exist in a different forum is not for our consideration.

Judgment is reversed and the cause remanded for entry of judgment in accordance with this opinion.