ESTATE OF HERMAN HOHENSEE, SR., DECEASED, ANNE HOHENSEE, SPECIAL ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51222. Filed March 16, 1956.

*H. W. Schuler, Esq.,* for the petitioner.
*J. Bruce Donaldson, Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* Respondent determined a deficiency of $7,038.25 in estate tax for the Estate of Herman Hohensee, Sr., deceased. Petitioner claims an overpayment of $5,686.63. The first issue presented is whether the contribution of property to an inter vivos trust, jointly created by decedent and his wife, and the retention of certain income interests therein, require inclusion of any part of the corpus in his gross estate, and if so, what part. If includible, there are further issues of whether the estate is entitled to the marital deduction, and whether certain charitable bequests are deductible.

Herman Hohensee, Sr., hereafter sometimes referred to as decedent, died on November 10, 1949. His widow, Anne, hereafter referred to as his wife, has already been discharged as executrix under decedent's will. She was appointed special administratrix for the purpose of prosecuting this proceeding.

All facts, other than that last stated, have been stipulated and are hereby found.

A Federal estate tax return was filed on November 15, 1950, with the collector of internal revenue for the district of Wisconsin, disclosing liability of $5,686.63.

On May 1, 1933, decedent and his wife, as settlors, transferred certain property to an irrevocable trust, their three children to act as trustees. The settlors were each to receive one-half of the income for life, with the entire income to the survivor for the remainder of his or her life. The remainder at the death of the surviving settlor was to go to the three children or their issue. This trust was still in effect at the time of decedent's death.

Upon its creation, decedent transferred to the trust a tract of land located in Milwaukee County, Wisconsin, having a fair market value on November 10, 1949, of $17,500. This property had been owned just prior to the transfer solely by decedent. On November 10, 1949, it was still a part of the trust.

At the same time, each settlor transferred to the trust 160 shares of $100-par-value stock of Herman Hohensee, Inc., a Wisconsin corporation. At decedent's death, 160 shares of this stock had a fair market value of $88,443.20. At that time all 320 shares originally transferred to the trust were still part of the corpus.

On November 10, 1949, the total value of property transferred to the trust by decedent was $105,943.20, and by his wife $88,443.20, making the total amount $194,386.40.

The wife was 83 years of age at decedent's death. On that date, the present value of the right to the entire income of an $8,750 portion of the trust corpus for the remainder of the expected life of the wife was $1,043.08. The present value on that date of the right to receive the entire income on a $105,943.20 portion of the corpus for the remainder of the wife's expected life was $12,629.45.

Decedent's last will and testament provided for distribution of the entire residue of the general estate to his wife, after three charitable and religious bequests totaling $900. On December 2, 1949, the will was admitted to probate in the County Court of Milwaukee County, Wisconsin.

The general estate of decedent, subject to administration, consisted only of the following assets:

Stocks and bonds_____ $1,810. 27
Cash_____ 15,482. 00
Miscellaneous property_____ 1,566. 48

Total assets in the estate subject to probate_____ $18,858. 75

If the expenses of administration, debts of the deceased, widow's allowance, Wisconsin inheritance tax, and Federal estate tax, as

asserted, had been paid out of the general estate, the assets would have been insufficient to pay all claims, and there would be nothing remaining for the payment of bequests or for distribution to the surviving spouse.

On November 27, 1950, the final account was filed with the County Court. On April 4, 1951, a supplemental final account was filed. The trust advanced to the general estate the sum of $5,686.63. The trust also advanced for the payment of Wisconsin State inheritance tax and attorneys' fees and disbursements the sum of $4,853.80. These sums are shown in the final account and supplemental final account as follows:

*Final Account*

| | |
|---|---|
| Monies advanced on behalf of heirs-at-law of decedent on account of Federal estate tax | $5,686.63 |

*Supplemental Final Account*

| | |
|---|---|
| Monies advanced by heirs-at-law on account of Wisconsin State inheritance tax | 2,700.00 |
| Monies advanced by heirs-at-law of decedent on account of additional Wisconsin State inheritance tax | 152.30 |
| Monies advanced by heirs-at-law of decedent on account of attorneys' fees and disbursements | 2,001.50 |

By reason of these advancements, the general estate had sufficient funds to make the disbursements outlined in the final account and supplemental final account, and to leave $8,818.70 for distribution to the wife under the residuary clause of the will.

On November 4, 1953, the wife, as special administratrix, filed a claim for refund of the entire $5,686.63 with the director of internal revenue at Milwaukee, Wisconsin.

Respondent disallowed the deduction of $900 claimed in the return as charitable and religious bequests.

In computing its estate tax petitioner claimed a marital deduction under section 812 (e), Internal Revenue Code of 1939, of $34,367.94. This aggregate amount is made up of the following items:

| | |
|---|---|
| 1. Assets of the general probate estate | $18,858.75 |
| 2. Life insurance proceeds payable to surviving spouse | 5,675.18 |
| 3. Jointly owned property | 287.50 |
| 4. Value of the life interest of surviving spouse in the property transferred by decedent to the trust | 12,063.17 |
| | |
| Total properties passing to surviving spouse | $36,884.60 |
| Less: Federal estate tax and other death taxes payable out of the above-listed properties | 2,516.66 |
| | |
| Claimed marital deduction | $34,367.94 |

Respondent has disallowed in the computation of the marital deduction items 1 and 4.

The general estate was liable for the following expenses, debts, and taxes:

| | |
|---|---:|
| Funeral and administration expenses | $3,433.03 |
| Debts of decedent | 381.45 |
| Widow's allowance | 5,500.00 |
| State inheritance tax | 2,852.30 |
| Federal estate tax (not less than)[1] | 11,162.53 |
| Total | $23,329.31 |

[1] Omitting disallowance of both the marital deduction for the general estate and the charitable deduction.

Decedent owned a fee simple interest in real estate valued at $17,500. From it he carved out, by means of a trust, an estate in one half for the life of another. What remained—everything else—he voluntarily divided into two parts: That which would exist during his life; and that which would take effect only after his death. He retained all of the first part and parted only with all of the second part. At first blush, an action more testamentary in nature is difficult to conceive. See *Commissioner* v. *Church's Estate*, 335 U. S. 632.

The part which he retained constituted, in effect, a life estate in one half and a reversionary life estate in the remainder after the prior estate for his wife's life. As of the date of the transfer it was impossible to tell how much decedent would get without knowing when he would die—in other words, a time not ascertainable without reference to his death. This retained interest, in fact, yielded him less than it might have because of the circumstance that he predeceased his wife. See *Helvering* v. *Hallock*, 309 U. S. 106. But in prospect, when the trust was created, any contingency merely contributed to the question of valuation. The value of the transfer for estate tax purposes is determined by reducing the value of the transferred property by the amount of the outstanding income interest[1] in the wife. *Estate of Milton J. Budlong*, 7 T. C. 756, 764, reversed other issues sub nom. *Industrial Trust Co.* v. *Commissioner*, (C. A. 1) 165 F. 2d 142.

If there were doubt about the correctness of this construction of section 811 (c), Internal Revenue Code of 1939, it should be completely dispelled by the committee reports in connection with the Technical Changes Act of 1949.[2] This decedent died after the enactment of that,

[1] The deficiency has been determined by that approach; reduction was made to the extent of $1,043.08, present value at decedent's death of the widow's right to income for life in the one-half interest amounting to $8,750.

[2] SEC. 7. TRANSFERS TAKING EFFECT AT DEATH.

(a) Section 811 (c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

"(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

"(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\*     \*     \*     \*     \*     \*     \*

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his

legislation. In reenacting section 811 (c) so as to apply in full to transfers after June 7, 1932 (which this was), the Conference Committee states explicitly: "The expression 'not ascertainable without reference to his death' as used in section 811 (c) (1) (B) * * * *includes the right to receive the income from transferred property after the death of another person who in fact survived the transferor * * *.*" (Conf. Rept. No. 1412, 81st Cong., 1st Sess. (1949). Emphasis added.)

The committee report does not make it clear whether the enacting Congress considered this to be a change from existing law. Nor are we required to speculate in this respect. But one thing is certain. Section 811 (c) either applied to this situation from its original enactment in 1932, or it was changed in 1949 to include it. If the Technical Changes Act worked a change from the previous statutory provision, then *Estate of Charles Curie*, 4 T. C. 1175, even if correct under the law as it then stood, would not govern the present situation in view of the change in the legislation after the decedent in the *Curie* case died. On either approach, the present decedent's reservation of a secondary life estate was a testamentary disposition covered by a section 811 (c).

Into the same trust and at the same time, petitioner transferred personal property valued at $88,443.20. This was exactly matched by an equal contribution to the same trust by his wife. The income was to be shared with a residuary life estate to the survivor. Whether these are treated as reciprocal trusts, see *Lehman* v. *Commissioner*, (C. A. 2) 109 F. 2d 99, certiorari denied 310 U. S. 637, or as separable trusts in which the income of the property contributed by petitioner was reserved to himself for life, see sec. 811 (c) (1) (B); *Claire Giannini Hoffman*, 2 T. C. 1160, 1185, affd. (C. A. 9) 148 F. 2d 285, certiorari denied 326 U. S. 730; *Estate of Henry H. Scholler*, 44 B. T. A. 235, the result that the value of the personal property is includible in his estate seems inescapable.

Petitioner's reliance upon *Guggenheim* v. *United States*, (Ct. Cl., 1953) 116 F. Supp. 880, seems to us misplaced. That case dealt only

death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death."

  *   *   *   *   *   *   *

(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811 (c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of section 811 (c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

(1) a transfer made prior to March 4, 1931; or

(2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

with section 811 (c) (1) (C) [3] and with the 5 per cent provision which is applicable only to that subsection. That the present situation cannot be forced into the area covered by section 811 (c) (1) (C) is apparent, not only by the express language of subdivision (c) (1) (B), which does include this situation, but by the prohibition of section 811 (c) (2) that "reversionary interest" within the meaning of the 5 per cent provision does not include a possibility "that the income alone from such property may return to him," a precise description of what would have happened under this decedent's transfer. Since, as we have said, the situation falls squarely within subdivision (B) and is ruled out of subdivision (C), only the provisions of the former are relevant.

In the alternative, there is a contention that the widow's interest in the trust entitles the estate to the marital deduction. Sec. 812 (e), I. R. C. 1939. But it seems clear that as to her share there was such a terminable interest that no marital deduction is permissible. *Estate of Louis B. Hoffenberg*, 22 T. C. 1185, affirmed per curiam (C. A. 2) 223 F. 2d 470; *Estate of Frank E. Tingley*, 22 T. C. 402, affirmed sub nom. *Starrett v. Commissioner*, (C. A. 1) 223 F. 2d 163. Nor was there any residuary estate left out of which the widow could secure any bequest "from the decedent" [4] and hence enable

[3] Technical Changes Act of 1949.

SEC. 7. TRANSFERS TAKING EFFECT AT DEATH.
(a) Section 811 (c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:
"(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—
"(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—
* * * * * * *
"(C) intended to take effect in possession or enjoyment at or after his death.
"(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate."

[4] SEC. 812. NET ESTATE.
For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—
* * * * * * *

the estate to claim the marital deduction as to this portion. The facts show that expenses and taxes more than consume the entire value of the estate actually left at death. True, certain sums were distributed to the widow but these are shown to have been made possible only by contributions on the part of the trust, or of decedent's "heirs-at-law," presumably the children who were also trustees and remaindermen under the trust. The widow did not receive these sums from the decedent [5] and if debts, expenses, and taxes reduce the residuary legacy to nothing, the legatee is not considered to have received anything from the estate. *Rogan* v. *Taylor*, (C. A. 9) 136 F. 2d 598. No contention that the tax should be apportioned between the trust and the residuary estate is permissible under the law of Wisconsin, *In re Uihlein's Will*, 264 Wis. 362, 59 N. W. 2d 641, 648, which is determinative of the matter. *Riggs* v. *del Drago*, 317 U. S. 95.

By reasoning similar to that used in considering the marital deduction, the deduction claimed for charitable bequests [6] must be denied. The assets subject to probate are exhausted in payment of debts, expenses, and taxes, including Federal estate taxes. Insurance proceeds payable directly to the widow are not part of the estate, see *Hutson* v. *Jenson*, 110 Wis. 26, 38, 85 N. W. 689, and the value of jointly held property is too insignificant to affect the result. There are no assets in the estate available to pay charitable bequests. See *Rogan* v. *Taylor*, *supra*.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

   (1) ALLOWANCE OF MARITAL DEDUCTION.—

      (A) In General.—An amount equal to the value of any interest in property which passes or has passed *from the decedent* to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. [Emphasis added.]

[5] The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the decedent by his will leaves the residue of his estate to the surviving spouse and she pays, or if the estate income is used to pay, claims against the estate so as to increase the residue, such increase in the residue is acquired by purchase and not by bequest. Accordingly, the value of any such additional part of the residue passing to the surviving spouse cannot be included in the amount of the marital deduction. [S. Rept. No. 1013 (Part 2), 80th Cong., 2d Sess. (1948).]

[6] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

    \*       \*       \*       \*       \*       \*       \*

   (d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests \* \* \* to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \*