200 Cal.App.2d 408 (1962)
Estate of DOMINICA L. FABRIS, Deceased. CARL CONRADI, as Executor, etc., Appellant,
v.
ALAN CRANSTON, as State Controller, Respondent.
Civ. No. 19854. 
California Court of Appeals. First Dist., Div. One. 
Feb. 19, 1962.
 Robert L. Dreyfus for Appellant.
 W. Sumner Holbrook, Jr., Francis H. O'Neill, Gregory A. Harrison, Howard J. Finn, George T. Cronin, Hamilton W. Budge, Arnold I. Weber, Lamson, Jordan & Walsh, Paul S. Jordan, and Stanley Walsh, as Amici Curiae on behalf of Appellant. *409
 J. D. Lear, Acting Chief Inheritance Tax Attorney, Charles J. Barry, Chief Assistant Inheritance Tax Attorney, J. D. O'Hara, Associate Inheritance Tax Attorney, and Roy C. Gill, Assistant Inheritance Tax Attorney, for Respondent.
 BRAY, P. J.
 Appellant appeals from an order overruling objections and fixing inheritance tax.
 Question Presented
 What is the effect of the repeal of section 13989, Revenue and Taxation Code, as to exclusion or inclusion of the federal estate tax in computing for California inheritance tax purposes the clear market value of property transferred?
 Record
 This is a judgment roll appeal. Decedent, whose estate is involved in this litigation, died one month after the repeal of section 13989 (Stats. 1959, ch. 1128, 5). The inheritance tax appraiser filed his report in which in appraising the value of each legatee's and devisee's interest in the estate, he included the proportionate share of the federal estate tax in the value of the interest of each respectively. In other words, in arriving at the appraised value of the interest of the particular legatee or devisee the appraiser refused to deduct the federal estate tax. The will provided that certain specific legacies were to be tax free, the burden falling on the residue. The court, over the objections of appellant, approved the report of the appraiser. [fn. 1]
 Effect of Repeal of Section 13989
 [1] Section 13402 provides that as to the state inheritance tax, "The tax is computed upon the clear market value of the property transferred, but only upon that portion in excess of the exemptions allowable on the date of the transferor's death. ..." Section 13982 provides: "In determining the market value of property included in any transfer subject to this part, the deduction specified in this article, and no others, are allowed against the appraised value of the property. ..."
 Prior to its repeal in 1959 section 13989 provided: "Any *410 amount due or paid the Government of the United States as a Federal inheritance or estate tax in the estate of any decedent is deductible from the appraised value of property included in any transfer subject to this part made by the decedent. ..."
 It is the contention of appellant and amici curiae that in spite of the repeal of this section the amount of estate tax should not have been included in the computation of the "clear market value of the property transferred. ..." ( 13402.) They contend that after the repeal of section 13989, the inheritance tax law on this subject is exactly as it was at the time to which the decision in the Estate of Miller (1921) 184 Cal. 674 [195 P. 413, 16 A.L.R. 694], hereafter discussed, applied, since there was not at the time of Miller's death in 1916 nor at the time of Fabris' death any statutory provision either excluding or permitting any deduction for a federal estate tax. Additionally, amici curiae contend that the federal estate tax is deductible as an "expense of administration." Respondent contends and the court found, in effect, that the repeal of section 13989 did not make the rule of the Miller estate applicable and that federal estate taxes are not "expenses of administration."
 In Estate of Slack (1948) 86 Cal.App.2d 49, 56 [194 P.2d 61], the court said: "The history of the relation between federal estate taxes and the California inheritance taxes is interesting. In the original inheritance tax act there was no provision for a deduction of federal estate taxes. In Estate of Miller, 184 Cal. 674 [195 P. 413, 16 A.L.R. 694], the court in construing the inheritance tax act as it existed in 1916, held that as the tax was to be computed on the 'clear market value' of the 'beneficial interest,' the federal estate tax should be deducted 'since it is plain that what the transferee receives is only the portion of what the decedent left which remains after the federal tax is taken.' (P. 680.) In 1917, the inheritance tax act was amended to provide definitely that no deduction should be made for any inheritance or estate tax paid to the government of the United States. (Stats. 1917, p. 883.) The constitutionality of this amendment was upheld in Estate of Watkinson, supra [191 Cal. 591 (217 P. 1073)], and Stebbins v. Riley, supra [268 U.S. 137 (45 S.Ct. 424, 69 L.Ed. 884, 44 A.L.R. 1454)]. In 1921, this amendment was repealed and the provisions that are now codified in section 13989 were first adopted."
 We have hereinbefore set forth the provisions of section *411 13989 as they existed at the time of Estate of Slack. Since that time, one more bit of history has been added to the relation between federal estate taxes and the California inheritance taxes, namely, the repeal in 1959 of section 13989.
 At the time to which Miller applied (1916), there was no statutory provision concerning either inclusion or deduction of estate taxes in arriving at the "clear market value" of the "beneficial interest" of the legatee or devisee. Miller determined that in arriving at the clear market value the estate taxes should be deducted from the value of the interest. Then by statutory provision in 1917 the first statutory reference to estate taxes was made when the Legislature expressly provided that no deduction could be made for estate taxes. Appellant's contention that the Miller rule is now in effect, if reduced to its logical conclusion, would mean that even during the period from 1917 to 1921, when the statutory provision expressly provided that estate taxes were not deductible, the Miller rule was still in effect notwithstanding that statute.
 When the Legislature in 1921 enacted section 13989 providing that an estate tax "is deductible from the appraised value" it used the same language as it used in connection with all other deductible items set forth in article 2, chapter 6, "Deductions," which it there said could be deducted in arriving at market value; thus debts of decedent ( 13983), funeral and last illness expenses ( 13986), taxes and assessments ( 13987), expenses of administration ( 13988, 13988.1), are "deductible from the appraised value ..."
 Estate of Miller, supra, pointed out that while the federal tax "is not a succession tax, but an estate tax, not a tax on what comes to the beneficiaries or heirs, but upon what is left by the decedent ...," "[t]he California tax is a succession tax, a tax on the beneficial interest of each beneficiary or heir." (P. 678.) Nevertheless, it is conceded that the Legislature has the power to provide that in arriving at the value upon which the beneficiary or heir must pay an inheritance tax the estate tax is not deductible. (See Estate of Watkinson (1923) 191 Cal. 591 [217 P. 1073].) The question here is, did the Legislature so act in repealing section 13989? We believe that it did.
 Estate of Miller states that the plain purpose of the California inheritance tax "was that the clear market value of the beneficial interest transferred should be its net clear value" (p. 677; emphasis added), and then went on to state that to arrive at the net clear value of the beneficial interest estate *412 taxes must first be deducted. Section 13402 puts it a little differently. It states, in effect, that the deduction of exemptions is to be made from the clear market value, not to arrive at the clear market value. On the other hand, section 13989, when in effect, as well as sections 13983, 13986, 13987, 13988 and 13988.1 above mentioned, use the language that the deductions are to be made from the "appraised value." Thus it would appear that when in 1943 the Legislature reenacted section 13989, it did not strictly follow Estate of Miller. It made deduction of estate taxes, as with other deductions, a deduction not to establish the clear market value but from the clear market value.
 Appellant in his reply brief asks, "What is the value of the property transferred on which Inheritance Tax may be imposed?" Sections 13951 and 13982 answer that question. Section 13951 states, "... the value of property included in any transfer ... is the market value of the property ..." Section 13982 states, "In determining the market value ... the deductions specified in this article, and no others, are allowed against the appraised value ..." (Emphasis added.) To say that to determine the market value for inheritance tax purposes, one takes the appraised value, reduces that value by the amount of the estate tax and then deducts the allowable deductions, is to give no meaning to the "no others" clause in section 13982. It may very well be that to require an heir to pay an inheritance tax on that portion of his inheritance which is paid out for estate taxes is unfair. However, that is a matter for the Legislature to consider, not the courts, provided, of course, that in the event of ambiguity in the statute, such matter could be kept in mind in solving that ambiguity. However, we see no ambiguity in the Inheritance Tax Act. It is perfectly clear if the "no others" clause is given effect. It is only when that clause is disregarded that any ambiguity could arise.
 As pointed out in Estate of Atwell (1948) 85 Cal.App.2d 454 [193 P.2d 519], the state in conferring on an heir the privilege of succeeding to property, has the right to require that a portion of that property be contributed to the state, and may declare that no part of the estate tax shall be deducted in computing the inheritance tax.
 On January 28, 1959, Governor Brown presented to the Assembly a budget message. Concerning "Inheritance Tax" he stated, after recommending certain increases in the inheritance tax rates, "Present provisions for credit on payments *413 of federal estate taxes should be eliminated." [fn. 2] The Governor then pointed out the increase in revenue which would result from the changes proposed. Presumably the Legislature repealed section 13989 pursuant to the Governor's request and for the purpose of increasing the inheritance tax revenue. While no presumptions or inferences may be drawn as to legislative intent in tax matters and the intent must be decided on what the Legislature actually said in its statutes, it is significant that in repealing section 13989 the Legislature left in effect section 13982, providing that no deductions could be made except those expressly provided.
 In Estate of Watkinson, supra, 191 Cal. 591, in holding that the provision of the Inheritance Tax Act of 1917 (Stats. 1917, p. 883) which provided that in determining the market value of the property transferred, no deduction could be made for estate taxes paid, was constitutional, the court refused to follow the contention there made, somewhat similar to the one here made, that because of language in the Estate of Kennedy (1910) 157 Cal. 517 [108 P. 280, 29 L.R.A. N.S. 428], which dealt with deductions to be made prior to the inheritance tax appraisement under the then Inheritance Tax Act and which language was repeated and approved in Estate of Miller, the Legislature did not and could not have intended that estate taxes could not be deducted. The court pointed out that that language was used with reference to the terms and interpretation of the inheritance tax laws as they then stood, and not as they stood after enactment of the statute prohibiting deduction of estate taxes. The language referred to, and which in our case is relied upon by appellant and amici curiae, was to the effect that as the California inheritance tax is imposed solely upon the devisee, legatee or heir, and upon him only as to property he actually takes on distribution, " ' "... it would appear to be a most absurd and inequitable provision that imposed a tax on one for the privilege of succeeding as heir, devisee, or legatee to certain property of the decedent, where the very property to which he is so held to succeed is lawfully diverted by the probate court to other purposes and never can be distributed to him." ' " (P. 595.) The court then points out that " ' "... the tax is imposed and is sustainable upon the theory that a state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed *414 to that state ..." ' " (p. 596) and states after referring to the Matter of the Estate of Bowditch, 189 Cal. 377 [208 P. 282, 23 A.L.R. 735]: " '... it follows necessarily that the state has full power to declare by statute what burdens or encumbrances, which by law or by the act of the decedent had become affixed to the interest of any particular heir, devisee, or legatee, shall or shall not be excluded from the computations of the inheritance tax appraiser in reporting the amount of the inheritance tax to be imposed by the state thereon; and it also follows necessarily from the views above expressed by this court in Estate of Bowditch, supra, and from the last above deduction, that the amendment to the prior inheritance tax measures effected by the statute of 1917 and requiring that no deduction should be made on account of the federal inheritance taxes in determining the market value of the property to be charged with the state inheritance tax, is not inconsistent with the other or formerly existing provisions of said statute nor in anywise doubtful as to the interpretation to be given to its plain and simple terms. We find no merit, therefore, in the first contention urged by the appellant and by amici curiae herein.' "
 Appellant and amici curiae contend that the Legislature must have known of the Miller decision (see Sutter Hospital v. City of Sacramento (1952) 39 Cal.2d 33, 38 [244 P.2d 390], and 45 Cal.Jur.2d p. 615, to the effect that it is presumed that the Legislature in enacting a statute is familiar with existing judicial decisions) and therefore the repeal of section 13989 ipso facto thrust the situation back to where it was at the time of Miller because of the failure of the Legislature in repealing section 13989 to enact positive legislation overcoming the effect of the Miller decision. However, as hereinbefore pointed out, the statutory situations at the time of Miller and in 1959 when section 13989 was repealed, were entirely different. At the former time there were no deductions of any kind provided in the Inheritance Tax Act. Miller held that the deduction of estate taxes was implied in the act. But in 1959 there was the express provision of section 13982, "In determining the market value ... the deductions specified in this article, and no others, are allowed against the appraised value of the property." (Emphasis added.) Moreover, the history of the act since 1916 shows that the rule of Miller no longer was in effect. Thus, it could not be contended that during the years when the statute declaring that no deduction of estate taxes was permitted was in effect, the rule of Miller *415 still applied. Yet the contention that the deductions provided in the Inheritance Tax Act are only applicable after the clear market value of the property is ascertained by excluding from the appraised value the estate taxes, logically leads to the conclusion that although the statute then expressly provided that there could be no deduction of estate taxes; nevertheless they could be deducted as an exclusion in arriving at the clear market value.
 Had section 13982 been in effect in 1916, the opinion in Miller indicates that the decision would have been different, for in distinguishing the case of In re Sanford's Estate (1919) 188 Iowa 833 [175 N.W. 506], the court said: "It is not in point for the reason that the Iowa statute, unlike ours, particularly specifies what should be deducted before computing the tax, and that nothing else should be deducted, and the federal tax did not come within any of the deductions authorized. It is upon this peculiarity of the statute that the decision goes." (P. 681.)
 Section 13402 provides: "The tax is computed upon the clear market value of the property transferred, but only upon that portion in excess of the exemptions allowable ..." It is not, and cannot be, contended that the word "exemptions" includes estate taxes.
 Thus, the scheme of the Inheritance Tax Act is that the "appraised value" of the estate is only reduced by the deductions allowed ( 13982). For tax purposes this provides the "clear market value" from which statutory exemptions may be taken ( 13402). Thus the appraised value of the estate less the allowed deductions and exemptions constitutes the base upon which the tax is levied. Any other expenditure in the estate cannot be considered in arriving at this base, and as estate taxes are not in the deductions allowed, they cannot affect this base.
 Section 9607, Government Code, providing, "No statute or part of the statute, repealed by another statute, is revived by the repeal of the repealing statute without express words reviving such repealed statute or part of a statute" (emphasis added) has no application here. The repeal of section 13989 did not revive any former statute. However, its repeal did not repeal section 13982.
 Appellant refers to the general rule that ordinarily the repeal of a statute will revive the common law rule abrogated or changed by the repealed statute, and argues that by analogy, the Miller rule is revived. However, the general rule *416 referred to does not apply if the statutes remaining negate the common law rule. So here, it is possible that were it not for section 13982, which negates the Miller rule, the repeal of section 13989 might have reestablished that rule. But the continued existence of section 13982 makes the Miller rule inapplicable.
 Estate Taxes Are Not Included in "Ordinary Expenses of Administration"
 [2] It is contended that in any event, estate taxes must be deducted because they are "ordinary expenses of administration." Section 13988 provides that such expenses are deductible from the appraised value of the property. It then states: "Included in 'ordinary expenses of administration' are the following: ..." (a) ordinary commissions of executors and administrators; (b) the ordinary fees allowed attorneys for executors and administrators under section 910, Probate Code; (c) any fees and expenses paid to the inheritance tax appraiser. (Emphasis added.) The contention here made is that because of the word "included" in section 13988 other expenses of administration than those set forth in (a), (b) and (c) are deductible and therefore estate taxes are "included." This is a non sequitur.
 From the very beginning of the Inheritance Tax Acts to date, estate taxes have been considered separately from ordinary expenses of administration. Miller so treated them. The amendments to the act first disallowing and then allowing the taxes as deductions have treated them as being separate and distinct from the other deductions. Estate of Atwell, supra, 85 Cal.App.2d 454, 460, used the language, "In California the federal estate tax is a charge against the gross estate in the same category as any other charge which the executor or administrator must pay." This is far from being a holding that the estate tax is an ordinary expense of administration. The question of whether it was or was not, was not before the court. A reading of the case shows that the court used the language in merely a broad sense because the tax was treated like an expense of administration. See Hazard v. Bliss (1921) 43 R.I. 431 [113 A. 469, 474, 23 A.L.R. 431], where the court points out that under the Inheritance Tax Law of Rhode Island "expenses of administration" did not include estate taxes.
 Miller, page 679, quoted from In re Roebling's Estate, 89 N.J. Eq. 163, 166 [104 A. 295, 296], that the estate tax " '... is imposed upon the estate and is payable by the *417 executor as an administration expense ...' " Estate of Atwell, supra, 85 Cal.App.2d 459, 463, refers to this quotation in Miller and then says, "The federal estate tax is primarily a charge against the probate estate." While, of course, an estate tax is an administrative expense, as it is being paid out of the estate, it is not an expense that has been treated in this state under the term "ordinary expenses of administration."
 The amici curiae brief of the executors of the Moore estate point out that the doctrine of Miller to the effect that, absent any express statutory provision to the contrary, the federal estate tax is not included in the computation of the state inheritance tax, is supported by great weight of authority. But this fact does not solve our problem which is to determine whether there is statutory provision in California providing to the contrary. As we have pointed out, such provision exists.
 In view of our decision it becomes unnecessary to consider the contention of amici curiae coexecutors of the Naughton estate concerning the "Nonexistent Estate Residuum."
 The order is affirmed.
 Tobriner, J., and Sullivan, J., concurred.
NOTES
[fn. 1] 1. Amici curiae briefs supporting appellant's position on the appeal were filed on behalf of Orpah W. Bowman as executrix of the Estate of Elsie Bowman, deceased; W. Sumner Holbrook, Jr., and Francis H. O'Neill as coexecutors of the Estate of Sara Petty Naughton, deceased; and Herman Phleger and Crocker-Anglo National Bank as executors under the will of Florence Moore, deceased.
[fn. 2] 2. Assembly Daily Journal, January 28, 1959, page 386.