89 Cal.App.3d 1003 (1979)
153 Cal. Rptr. 128
Estate of MARY H. SAGAL, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
BERNICE RINEY, as Executrix, etc., Objector and Appellant.
Docket No. 44216.
Court of Appeals of California, First District, Division Four.
March 1, 1979.
*1006 COUNSEL
Myron Siedorf, Edwin Rosenthal and John D. Schell for Petitioner and Appellant.
White, Giambroni & Walters and Joseph T. White, Jr., for Objector and Appellant.
OPINION
RATTIGAN, Acting P.J.
The above named decedent left a will and a codicil which were regularly admitted to probate. In subsequent proceedings upon her estate, the probate court entered an "Order Fixing Inheritance Tax And Directing Executor To Pay" in which it actually made four separate orders in enumerated parts. The executrix of the estate appeals from the entire order, but challenges only one part. The State Controller appeals from the other parts. The issues on both appeals involve the validity and effect, for state inheritance tax purposes, of a series of so-called "renunciations" filed by various persons named in the will and codicil.
The four-part order reflects testamentary and procedural complications which require that the record be summarized in detail. The testatrix executed the will and codicil in 1969, producing a single integrated instrument which read in successively numbered paragraphs. In pertinent part, it recited and provided as follows:
*1007 The testatrix was a widow with one child (Bernice Riney) and a granddaughter (Patricia A. Riney). She nominated Bernice to act as her executrix. In paragraphs Third and Fourth, she made specific gifts to Bernice with alternative provisions in the event Bernice did not survive her for 30 days. In paragraph Fifth, the residue of the estate was left to Bernice in a trust of which she was to be the income beneficiary for her life and the corpus would be distributed to Patricia upon Bernice's death.
Paragraph Eighth provided for the contingency that neither Bernice nor Patricia survived the testatrix for 30 days, in which event she left $10,000 to William I. McDonald, $10,000 to Joseph T. White, Jr., $100,000 to Lynda Pastorino, and the residue to these three persons (none of whom was related to her by blood or marriage) in trust for specified charitable purposes. Paragraph Ninth provided that state and federal death taxes were to be paid from the residue in all events, without reference to a contingency that any person survive the testatrix or not.[1]
The testatrix died in 1975, the integrated will was admitted to probate, and Bernice was appointed and qualified as executrix of the estate. She and Patricia survived the testatrix for more than 30 days, which meant that they were to take under paragraphs Third, Fourth and Fifth of the will and that paragraph Eighth would pass nothing to the three contingent beneficiaries named in it (McDonald, White and Pastorino). Bernice and Patricia undertook a deviation from this scheme by filing a joint "partial renunciation" in which they purported to disclaim, "from the bequest" of the residue made to them in paragraph Fifth, "that portion of the residue used to pay the federal estate tax" pursuant to paragraph Ninth. (See fn. 1, ante.) McDonald and White (but not Pastorino) each filed a "renunciation" in which he purported to disclaim any "interest" he might have received in consequence of the "partial renunciation."[2]
*1008 In contested inheritance tax proceedings which followed, the Controller reported the appraised values of the assets to be taken by Bernice and Patricia (both under the will and as surviving joint tenants of the decedent); subtracted the sum of "deductions" he had allowed them for inheritance tax purposes;[3] and produced a "clear market value" figure which he allocated between them in itemized taxable shares. He apparently proposed to include in each share the taxable values of a "bequest" made to the respective beneficiary of part of any amount paid as federal estate tax, and of a parallel "bequest" in the amount of respective state inheritance tax, on the theory that she was to receive both "bequests" by operation of paragraph Ninth of the will.[4] (See fn. 1, ante.)
Bernice and Patricia showed by declaration that Bernice, as executrix, had paid a federal estate tax in the amount of $70,982. They accordingly contended that the values taxed to them should be reduced by that amount because they had disclaimed a "bequest" of it in their "partial renunciation." The Controller opposed this result, and the controversy was submitted for decision. The probate court resolved it by making the four-part order described above.[5] Bernice appeals from the order as *1009 executrix, but challenges only part 4. The Controller appeals from parts 1, 2 and 3.
The order, and the opposing contentions on the appeals, should be analyzed in light of the "renunciation" scheme which Bernice and Patricia had planned, in progressive stages, with the objective of legitimately avoiding inheritance taxes on $70,982. Its first two stages reflected their premises (1) that paragraph Ninth of the will (see fn. 1, ante) operated as a testamentary "transfer" to them in the form of a constructive bequest of the federal estate tax which materialized at $70,982; and (2) that the "transfer" also gave them a disclaimable "interest" which they might effectively renounce pursuant to the disclaimer provisions of the Probate Code.[6] From these two premises, the progression would proceed in the following further stages:
*1010 (3) They would renounce the $70,982 "interest" by filing a "disclaimer" of it, which (4) would operate to absolve them from liability for inheritance taxes on it because the Inheritance Tax Law would give effect to their disclaimer for that purpose. (Rev. & Tax. Code, § 13409 [see fn. 6, ante].) (5) Their disclaimer would also cause the "interest" to "descend ... as if" they had predeceased the testatrix as provided in section 190.6, which meant that it would pass to the three contingent beneficiaries (McDonald, White and Pastorino) who were to take in that event as provided in paragraph Eighth of the will. (6) The contingent beneficiaries would avoid taking the "interest" (and liability for inheritance taxes on it) by successively disclaiming it in the same manner, each acting as a "beneficiary" who would be "entitled, but for his disclaimer," to take the "interest" by succession to it as provided in section 190, subdivision (a).
Bernice and Patricia undertook to effect the third stage of this progression by purporting to disclaim the $70,982 "interest" in their "partial renunciation." (See fn. 2, ante.) McDonald and White went along with the sixth stage by filing their successive "renunciations" of the "interest," but the scheme was partially aborted when Pastorino declined to participate. (See ibid.)
The probate court nevertheless salvaged the essence of the scheme by accepting its two premises and validating all three "renunciations" in part 1 of its order. Part 1 had the immediate effect of absolving Bernice and Patricia first, and McDonald and White in succession, from inheritance taxes on the $70,982. These results turned up in part 3, where the court fixed Bernice's and Patricia's inheritance taxes on the bases of taxable values which did not include that amount and fixed no taxes payable by McDonald and White. The court handled Pastorino's defection by *1011 ordering in part 2 that section 190.6 consequently operated to pass the full $70,982 to her alone; ordering in part 3 that she was liable for an inheritance tax fixed on it; and relieving her from that tax by ordering in part 4 that it was to be paid from the remaining assets of the estate. (See fn. 5, ante.)
Part 4 is challenged by Bernice upon the ground that it has the full-circle effect of imposing upon her and Patricia a de facto liability for inheritance taxes higher than the taxes they claim to have avoided in consequence of their "partial renunciation." The Controller contends that they avoided nothing because the "partial renunciation" was invalid in the first instance, and that the results pursued and ordered were invalid in succession. The Controller's position must be sustained.
The order was apparently made on the authority of Estate of Koerner (1975) 44 Cal. App.3d 447 [118 Cal. Rptr. 752]. Koerner involved an estate of which two beneficiaries were to take the residue under a will which provided that federal estate taxes were to be paid from it. (Id., at p. 449.) The probate court made an order fixing their inheritance taxes on the basis of the gross residue, although they were actually to receive only the net after payment of federal estate taxes in a specified sum. (Ibid.) The executor appealed, contending that the beneficiaries could not be subjected to inheritance taxes on that sum because its expenditure meant that it had not been "transferred" to them "within the meaning" of the provisions of the Inheritance Tax Law (Rev. & Tax. Code, §§ 13304 and 13401) which defined and taxed a "transfer." (44 Cal. App.3d at p. 450.) The Court of Appeal affirmed, holding that the sum had been "transferred" to the beneficiaries "in the legal sense," and for purposes of the Inheritance Tax Law, "however ephemeral and intangible that `transfer' may be characterized in a practical economic sense" by reason of the sum having been "spent." (Ibid.)
Koerner thus supports Bernice's and Patricia's premise (which the probate court adopted) that paragraph Ninth of the will effected a "transfer" to them of the amount of the federal estate tax which materialized at $70,982. The probate court also adopted their successive premise by determining (1) that the "transfer" gave them a disclaimable "interest" within the meaning of the disclaimer provisions of the Probate Code and (2) that they had effectively renounced the "interest" by filing their "partial renunciation" pursuant to those provisions. Koerner does not support either determination because it did not involve the disclaimer provisions, and it applies only to the extent of making Bernice and *1012 Patricia liable for taxes on the $70,982 pursuant to the Inheritance Tax Law. (Estate of Koerner, supra, 44 Cal. App.3d 447 at pp. 449-450.) Absent any authority for them in Koerner, we have tested both determinations against the language of the disclaimer provisions alone. We have concluded that both are erroneous, for separate reasons which require reversal of the order on alternative grounds. In the discussion which follows, we refer to the disclaimer provisions as quoted in footnote 6, ante.

(1) The "Partial Renunciation" Was Invalid Because the "Interest" Was Not Disclaimable

Bernice and Patricia are "beneficiaries" within the literal meaning of section 190, subdivision (a), because each is "entitled, but for ... [her] ... disclaimer, to take an interest ... (2) by devise [or] (3) by legacy or bequest...." We may acknowledge that the $70,982 "transferred" to them for purposes of the Inheritance Tax Law (Estate of Koerner, supra, 44 Cal. App.3d 447 at p. 450) may fall within the literal terms of the omnibus definition of an "interest" which appears in section 190, subdivision (b). It also appears that their "partial renunciation" complied with the formal requirements of a "disclaimer." (See § 190.1 and fn. 2, ante.)
To be the subject of a valid "disclaimer," however, an "interest" must be one "which would otherwise be succeeded to" by the person disclaiming it. (§ 190, subd. (c).) It must also be one which will effectively "descend" to another "as if the beneficiary disclaiming had predeceased the person creating the interest." (§ 190.6.)
The $70,982 constructively "transferred" to Bernice and Patricia could not "otherwise be succeeded to" by either of them, nor could it "descend ... as if" they had predeceased the testatrix, because it was to be spent from the residue in payment of the federal estate tax.[7] Once spent, the "ephemeral" existence it had for inheritance tax purposes (Estate of Koerner, supra, 44 Cal. App.3d 447 at p. 450) would be dissipated by the ineluctable fact that it had no real existence which would permit it to be disclaimed or to "descend." It could not acquire a resurrected existence *1013 by operation of the retroactive provisions of section 190.6 because its expenditure would leave nothing which might be retroactively treated. The "partial renunciation" of it was therefore invalid because it was not a disclaimable "interest" by our interpretation of section 190, subdivision (c), and section 190.6.
This interpretation is supported by a comparative view of the results reached in the order. Part 3 holds Pastorino liable for a $9,127 inheritance tax on the theory that $70,982 "passes" to her by operation of all three "renunciations" and section 190.6, as ordered in part 2. At that point, she is ostensibly liable to pay $9,237 on money she cannot possibly receive because it has been spent. Part 4 undertakes to resolve this anomaly by shifting her liability to the estate, which portends the successive consequences that the $9,237 is to be paid from its residue because paragraph Ninth of the will so provides; that Bernice and Patricia will bear the full impact of its payment because it is they who are to receive the net residue afterward; and that the impact will fall upon them at the tax level applicable to Pastorino, a blood stranger to the testatrix, which is higher than the level at which they would be taxed themselves as lineal issue. (See Rev. & Tax. Code, §§ 13307, subd. (a) and 13309 [classifying "transferees"], 13801 and 13803 [exemptions], 13404 and 13406 [rates].)
Part 3 imports that an inheritance tax may be payable by one who takes nothing. The consequences of part 4 would utterly frustrate the 1972 disclaimer scheme by escalating the very taxes whose avoidance it was designed to enable in a proper case. (See fn. 6, ante.) We conceive of these results as absurdities which a proper interpretation of the 1972 enactment will not permit.[8] (Dempsey v. Market Street Ry. Co. (1943) 23 Cal.2d 110, 113 [142 P.2d 929]; Verreos v. City and County of San Francisco (1976) 63 Cal. App.3d 86, 96 [133 Cal. Rptr. 649].)
Moreover, parts 2 and 3 of the order have the practical effect of granting Bernice and Patricia the amount of the federal estate tax ($70,982) as a deduction against the values taxable to them for purposes of the Inheritance Tax Law. (See fn. 4, ante.) (2) The probate court thus interpreted the 1972 disclaimer enactment, in combination with paragraph Ninth of the will, as permitting a deduction which the *1014 Legislature expressly disallowed when it amended the Inheritance Tax Law in 1959. (See fn. 3.) The resultant conflict invalidates the court's interpretation under the familiar principle that "`every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.'" (Italics added.) (Bozung v. Local Agency Formation Com. (1975) 13 Cal.3d 263, 274, fn. 7 [118 Cal. Rptr. 249, 529 P.2d 1017] [quoting Stafford v. Realty Bond Service Corp. (1952) 39 Cal.2d 797, 805 (249 P.2d 241)].)

(3) The "Partial Renunciation" Was Invalid Because the "Interest" Had Been Accepted

The caption recites our alternative ground of decision. It assumes that the $70,982 was a disclaimable "interest" within the meanings of sections 190 and 190.6, but it rests upon the provision of section 190.7 which establishes that "[a] disclaimer may not be made after the beneficiary has accepted the interest to be disclaimed." We have seen that Bernice and Patricia contemplated the expenditure of an unstated amount of money, in payment of the federal estate tax, when they executed the "partial renunciation." (See fn. 7, ante.) That expenditure, in any event, would portend immediately tangible results which would serve the interests of both. It would permit release of the federal lien which would otherwise impede distribution of the estate to them. (See Federal Tax Procedure (Cont.Ed.Bar 1968) §§ 4.42-4.44, pp. 159-160.) It would avoid the prospect of personal liability in either of them. (Op. cit., § 6.30, pp. 240-241.) The attendant bookkeeping would meet the requirement of state law that the federal estate tax "be charged against and paid out of the corpus" of the testamentary trust created by paragraph Fifth of the will. (Prob. Code, § 973.)
These benefits were also within the contemplation of Bernice and Patricia before they filed the "partial renunciation." Proceeding accordingly, they accepted the benefits which were to materialize from the payment of the federal estate tax when it occurred. For purposes of section 190.7, they accordingly "accepted" the "interest" with which the payment was to be made. (4) We construe the section's definition of events constituting an "acceptance" as illustrative but not exclusive. It follows that the "partial renunciation" was invalid because it succeeded their "acceptance" of the "interest" subsequently fixed of record in the amount of $70,982.
Because the "partial renunciation" was invalid upon either of the grounds described, the "renunciations" by McDonald and White were *1015 invalid in succession. Part 1 of the order is consequently erroneous in all respects, and the next three parts are erroneous because they are based on it. Upon the remand which will follow the required reversal, the probate court will fix inheritance taxes payable by Bernice and Patricia only. The court will do this on bases which will include the taxable values, as determined in conformity with the Inheritance Tax Law, of (1) their respective shares of the $70,982 paid in federal estate taxes and (2) the inheritance tax to be imposed upon each of them. (See the last paragraph of fn. 5, ante.)
The order is reversed. The cause is remanded to the superior court with directions to conduct further proceedings consistent with the views expressed herein. The State Controller shall recover costs on both appeals. Appellant executrix shall bear her own costs on both.
Christian, J., and Brunn, J.,[*] concurred.
NOTES
[1] Paragraph Ninth read in full as follows: "I direct that all inheritance, estate or other death taxes that may by reason of my death be attributable to my probate estate, or any portion of it, or to any property or transfers of property outside my probate estate, shall be paid by my Executrix out of the residue of my estate disposed of by this Will, without adjustment among the residuary beneficiaries, and shall not be charged against or collected from any beneficiary of my probate estate, or any other transferee or beneficiary of any property outside my probate estate."
[2] The "partial renunciation" was filed by Bernice and Patricia on December 16, 1975. Over their signatures, it read in pertinent part as follows: "PARTIAL RENUNCIATION TO [sic] SHARE OF RESIDUE. [¶] We, the undersigned, being duly sworn, say that we hereby renounce, waive, and disclaim from the bequest that we are entitled to receive under the residue clause of the will ... that portion of the residue which for inheritance tax purposes consists of ... that portion of the residue used to pay the federal estate tax."

The "renunciations" by White and McDonald were filed on January 16, 1976. Each read in pertinent part: "RENUNCIATION. [¶] I, ... being a named legatee in the ... Will ..., hereby renounce any and all interest that I may receive by virtue of the renunciation filed by BERNICE RINEY and PATRICIA RINEY on December 16, 1975...."
Pastorino filed no such document at any time. The record does not show that she has ever appeared in the probate proceeding, and she is not a party to either appeal. The briefs indicate, without dispute, that she declined to file a "renunciation" when McDonald and White filed theirs.
[3] The allowed "deductions" included the expenses of the decedent's last illness and funeral, her debts, property taxes due at the time of her death, commissions payable to the executrix and fees payable to her attorneys in the administration of the estate, other expenses of its administration, and miscellaneous items. They did not include any amount paid as a federal estate tax, which has not been a permissible deduction in the computation of inheritance taxes since the Legislature disallowed it by amending the Inheritance Tax Law to that effect in 1959. (See Historical Note, 60A West's Ann. Rev. & Tax. Code (1970 ed.) § 13989, p. 467; Estate of Fabris (1962) 200 Cal. App.2d 408, 409-416 [19 Cal. Rptr. 397].)
[4] This recital is based on arithmetical figures which were tabulated by the inheritance tax referee and amended on a later appearance by the Controller. The figures do not clearly demonstrate the proposal that the values of the two "bequests" be taxed because they show results but not the underlying calculations.
[5] The order provides as follows:

"ORDER FIXING INHERITANCE TAX AND DIRECTING EXECUTOR [sic] TO PAY
"... IT IS ORDERED:
"1. That the Partial Renunciations by Bernice and Patricia Riney dated December 16, 1975 and by Joseph T. White, Jr. and William I. McDonald dated January 16, 1976 of their right to receive that portion of the residue representing the amount of the federal estate tax are and each is valid and effective;
"2. The amount ($70,982) so renounced passes to Lynda Pastorino pursuant to the provisions of the decedent's will;
"3. In accordance with the above, the inheritance tax is fixed as follows:

 "Bernice Riney, daughter $14,366
 "Patricia Riney, granddaughter 4,225
 "Lynda Pastorino, stranger 9,237
 _____
 "Total Tax $27,918

"4. The executor [sic] is to pay the tax due on the share passing to Lynda Pastorino from the remaining assets of the estate...."
The amounts of inheritance tax fixed in part 3 also appear without the calculations which produced them, but the values taxed to Bernice and Patricia obviously exclude their shares of the "bequest" of federal estate tax which had materialized in the amount of $70,982 taxed to Pastorino. On the other hand, Bernice and Patricia were apparently taxed for the values of the "bequests" of inheritance tax made to them. (See the text at fn. 4, ante.) The latter feature is not challenged on either appeal.
[6] All statutory references are to these "disclaimer provisions" except where expressly indicated otherwise. They appear in chapter 11 ("Disclaimer of Testamentary and Other Interests," commencing with § 190) of division 1 ("Wills") of the Probate Code, to which they were added in 1972. (Stats. 1972, ch. 990, § 1, p. 1806.) For later reference, the pertinent sections of the chapter may be quoted here as follows:

"190. As used in this chapter, unless otherwise clearly indicated by the context: [¶] (a) `Beneficiary' means and includes any person entitled, but for his disclaimer, to take an interest ... (2) by devise, (3) by legacy or bequest, [or] (4) by succession to a disclaimed interest ...; [¶] (b) `Interest' means and includes the whole of any property, real or personal, legal or equitable, or any fractional part, share or particular portion or specific assets thereof, or any estate in any such property.... [¶] (c) `Disclaimer' means a written instrument which declines, refuses, renounces or disclaims any interest which would otherwise be succeeded to by a beneficiary; [¶] (d) `Disclaimant' means a person who executes a disclaimer on his own behalf or on behalf of another.
"190.1. A beneficiary may disclaim any interest, in whole or in part, by filing a disclaimer as provided in this chapter. The disclaimer shall (i) identify the decedent or donor, (ii) describe the property or part thereof or interest therein disclaimed, (iii) declare the disclaimer and the extent thereof, and (iv) be signed by the disclaimant.
".... .... .... .... .... .
"190.6. Unless otherwise provided in the will ... creating ... an interest, the interest disclaimed ... shall descend, go, be distributed or continued to be held as if the beneficiary disclaiming had predeceased the person creating the interest. In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest.
"190.7. A disclaimer may not be made after the beneficiary has accepted the interest to be disclaimed.... For the purposes of this chapter, if a disclaimer has not theretofore been filed, a beneficiary has accepted an interest if he, or someone acting on his behalf, (1) makes a voluntary assignment or transfer of, or contract to assign or transfer, the interest or part thereof, or (2) executes a written waiver of the right to disclaim the interest, or (3) sells or otherwise disposes of the interest or any part thereof pursuant to judicial process."
The 1972 enactment also amended the Inheritance Tax Law by repealing and reenacting section 13409 of the Revenue and Taxation Code. (Stats. 1972, ch. 990, §§ 2-3, pp. 1808-1809.) The repealed section had denied any effect to a disclaimer in connection with liability for inheritance taxes. The reenacted version "gives full effect to disclaimers and imposes inheritance tax on the ultimate recipient of the disclaimed interest." (Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) § 5.8, p. 84 [text and fn.].)
[7] The "partial renunciation" they filed in 1975 did not recite that the federal estate tax had been paid at that time (see fn. 2, ante), and the later declaration showing its payment did not indicate when that occurred. The "partial renunciation" nevertheless contemplated that an unstated amount of money "was to be spent" from the residue for that purpose as stated here. Once spent as then contemplated, it could neither "be succeeded to" by Bernice and Patricia nor "descend" from them.
[8] Still another absurdity would have developed if Pastorino had disclaimed the $70,982 "interest" when McDonald and White did, in which case it would further "descend" to someone else by the uninterrupted operation of section 190.6. Bernice suggests that it would have escheated to the State of California pursuant to the law of intestate succession. There is no evidence in the record of an absence of blood heirs which would permit this, and the concept illustrates its absurdity: a zero which cannot pass by "transfer" cannot pass by escheat.
[*] Assigned by the Chairperson of the Judicial Council.