[Civ. No. 24787. Fourth Dist., Div. One. Feb. 18, 1983.]

Estate of ELSA LOOMIS McMANUS, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
ALLEN R. LOOMIS, as Executor, etc., Objector and Respondent.

COUNSEL

Myron Siedorf, Margaret Groscup, Richard J. Barnet and Phyllis K. Fairbanks for Petitioner and Appellant.

Luce, Forward, Hamilton & Scripps, Robert B. Bottomley and Gregory D. Roper for Objector and Respondent.

OPINION

**WORK, J.**—Contending the probate court erred in interpreting a will provision, the State Controller appeals an order sustaining objections to an inheritance tax report and fixing inheritance tax in the estate of Elsa Loomis Mc-Manus directing all bequests be delivered free from all estate and inheritance taxes which shall be paid from the residue of the estate. The court correctly found the provision did not apply to the payment of state inheritance taxes because of the insufficiency of the residue after the payment of debts, claims, and expenses of administration. We reject the Controller's further contention the court allowed an impermissible deduction of federal estate tax, and we con-

clude the court properly construed the disputed provision according to the testatrix' express intent.

### Factual and Procedural Background

The McManus will contained numerous bequests and devises to relatives and friends, and left the residue to various religious and charitable organizations. It provided: "I direct that every gift, bequest and interest given under this Will, or any Codicil hereto, shall be delivered free from all estate inheritance taxes and that such taxes be paid out of the residue of my estate." Unfortunately, after paying the debts, claims and expenses of administration, the residue was insufficient to pay all inheritance and estate taxes. It was adequate to cover the total state inheritance taxes; it was not sufficient to pay the entire federal estate tax. The probate court instructed the executor: "[T]o pay out of the estate and collect from each transferee the full amount of inheritance tax determined on his or her transfer; to pay out of the property of the estate in the normal course of administration the full amount of the Federal estate taxes finally determined, including interest thereon and penalties, if any, and before making final distribution of the estate, to apply to the Court for an equitable proration of that part of the Federal estate tax which cannot be paid out of the residue of the estate due to [its] insufficiency . . . in the manner provided by law . . . ."

The state inheritance tax referee taxed not only the specific bequests, but also the theoretical bequests of inheritance tax on the specific bequests even though the court had already ordered the beneficiaries to pay their respective inheritance taxes because of the inadequate estate residue. The report set the total tax at $72,188. The probate court sustained the executor's objections to the report. The court found the possibility the residue would be insufficient was not foreseen when decedent included the tax clause within her will; had she anticipated such insufficiency, she would have intended the tax clause be disregarded to fulfill her dispositive intent; therefore, the tax clause should be disregarded as to inheritance taxes, resulting in no theoretical bequests of tax to any legatee or devisee as contemplated by title 18, California Administrative Code, section 13601.4; and the executor had already been instructed to collect from each beneficiary his or her share of the inheritance taxes as though the tax clause had never existed. The probate court then fixed the inheritance tax at $60,860, a total not excluding tax on the ineffective inheritance tax bequests.

### THE PROBATE COURT PROPERLY CONSTRUED THE WILL AND ASSESSED INHERITANCE TAXES ACCORDING TO STATE INHERITANCE TAX LAW[1]

---

[1]On June 8, 1982, the People approved an initiative measure, operative June 9, 1982, prohibiting the imposition of gift and death taxes by the state or any political subdivision of the state. (Rev. & Tax. Code, § 13301.) The initiative measure, however, imposes a state "pickup" tax whenever a federal estate tax is payable equal to the maximum allowable credit for state death taxes provided for under federal estate tax law for property located in California. (Rev. & Tax. Code, § 13302.)

■ The state inheritance tax is not a property tax, but rather "a succession tax imposed by reason of beneficial succession of property upon the death of another . . . ." (*Estate of Giolitti* (1972) 26 Cal.App.3d 327, 330 [103 Cal. Rptr. 38, 56 A.L.R.3d 1307].) The tax is "on the interest transferred to each beneficiary and in the absence of specific language freeing the bequest from the financial burden, the inheritance tax must be paid out of the beneficiary's share rather than the estate itself [citations]." (*Estate of Carley* (1979) 90 Cal.App.3d 582, 589 [153 Cal.Rptr. 528]; *Estate of Hendricks* (1970) 11 Cal.App.3d 204, 207 [89 Cal.Rptr. 748]; Rev. & Tax. Code, §§ 14101, 14121-14123.) ■ Similarly, the equitable apportionment of federal estate taxes among the beneficiaries is provided for by Probate Code section 970, reflecting the strong and fundamental public policy "that the burden of estate taxes should be allocated proportionately among the persons benefited, unless the testator expressly directs against apportionment [citation]." (*Estate of Stokley* (1980) 108 Cal.App.3d 461, 468 [166 Cal.Rptr. 587]; *Estate of Armstrong* (1961) 56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490]; *California First Bank* v. *Townsend* (1981) 124 Cal.App.3d 922, 928, 932 [177 Cal.Rptr. 723]; *Estate of Carley, supra,* at p. 568.) Consequently, "the apportionment of death taxes is the general rule to which exception is to be made only where there is a clear and unambiguous direction to the contrary. . . ." (*Estate of Carley, supra,* at p. 586; *Estate of Armstrong, supra,* at p. 802; *Estate of Stokley, supra,* at p. 468; *Estate of Lindner* (1978) 85 Cal.App.3d 219, 223 [149 Cal.Rptr. 331]; *Estate of Hendricks, supra,* at p. 206; see *Estate of Dark* (1974) 38 Cal.App.3d 890, 893 [113 Cal.Rptr. 727].)

■ Here, the testatrix' express intent not to prorate death taxes but instead to shift the entire tax burden to the residue of the estate, is undisputed and the residue of the estate, after payment of debts, fees and commissions, is not sufficient to pay the estate inheritance taxes as directed by the will. Accordingly, "the direction is ineffective to the extent the residue is not sufficient to permit compliance; the devises to [the respective beneficiaries] remain intact; but [they] are subject to the tax burdens imposed by statute as though the tax payment direction . . . never existed [citation]." (*Estate of Cochran* (1973) 30 Cal.App.3d 892, 897 [106 Cal.Rptr. 700]; *Estate of Nesbitt* (1958) 158 Cal. App.2d 630, 633 [323 P.2d 474]; see Annot., 37 A.L.R.2d 7, 126-128; 42 Am.Jur.2d, Inheritance, etc., Taxes, § 381, p. 595.) In other words, "[w]here there is a tentative residuary estate which is less than the amount of estate taxes which the will directs to be paid from the residuary estate, there is a partial failure of the tax clause, and after the residuary estate is exhausted in payment of taxes the burden of the balance of the taxes must be apportioned under the statute. The normal procedure in such a situation is to apply the full residuary estate to the payment of the taxes and to procure the balance required for such purpose by equitable allocation of the additional amount against the nonresiduary legacies and inter vivos gifts includible in the taxable estate." (42

Am.Jur.2d, Inheritance, etc., Taxes, § 381, p. 595, fns. omitted; *In re King's Estate* (1957) 6 Misc.2d 922 [160 N.Y.2d 929, 930]; see Annots., 71 A.L.R. 3d 247, 339; 69 A.L.R.3d 122, 453-454; 37 A.L.R.2d 7, 126-128.)

The executor claims the controlling codified cardinal canon is: "[a] will must be construed according to the testator's intention and his intention must be given effect to the extent possible." (*Estate of Stokley, supra,* 108 Cal.App.3d 461, 467; Prob. Code, § 101.) He urges the court's order, in essence, directs him to apply the entire residue to pay federal estate taxes, to collect from each transferee the full amount of state inheritance tax determined on his or her transfer, and to apply to the court to prorate the amount of estate tax unable to be funded from the residue. He contends this is consistent with both the decedent's express intention and legal precedent. He argues the probate court has given maximum effect to decedent's intent by declaring the tax clause inapplicable to the state inheritance taxes, thus eliminating taxable bequests of inheritance taxes. (*Estate of Irwin* (1925) 196 Cal. 366, 375 [237 P. 1074]; *Estate of Nesbitt, supra,* 158 Cal.App.2d 630, 632; Cal. Admin. Code, tit. 18, § 13601.4.) The court's order releases approximately $12,000 more residual funds to pay federal estate taxes.[2] Although the probate court's order seems to fully effectuate the testatrix' intent, the propriety of its order revolves around whether abatement rationale applies or the obligation of paying inheritance tax became fixed as of the date of death by the provisions of the will rather than upon the actual, beneficial receipt of the residual tax bequest.

█ The Controller claims the probate court's action unlawfully allows the federal estate tax to be deducted. █ As already noted, the direction in dispute providing for the payment of inheritance taxes from the residue constitutes a bequest of the amount of tax to the specific legatee, taxable by the state. (*Estate of Irwin, supra,* 196 Cal. 366, 375; Cal. Admin. Code, tit. 18, § 13601.4; Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) § 13.20, p. 315.) The amount of the inheritance tax is computed on the "clear market value" of the property in excess of the exemptions (Rev. & Tax. Code, § 13402), which is derived "by reducing the appraised or market value of includible transfers by those deductions specified as allowable in sections 13981 through 13991 'and no others.' (§ 13982; see also § 13312.) It is the expressed intent of the code that items mentioned in section 13981 through 13991 establish limitations on deductions allowable. (§ 13981.) . . . ██ ██

---

[2]We recognize that the federal government allows a credit against the estate tax with the amount of any state inheritance tax actually paid, but not to exceed a maximum tax credit predicated upon the adjustable taxable estate. (26 U.S.C. § 2011.) Consequently, the executor's argument would be meritless where the amount of estate inheritance taxes paid, including the amount imposed upon the bequest to pay state inheritance taxes, was less than the maximum tax credit permitted under section 2011. However, here, the state inheritance taxes imposed by the inheritance tax referee as well as the probate court substantially exceeded the maximum tax credit permitted.

[¶] The federal estate tax paid upon the death of a decedent is not a deductible debt in arriving at the clear market value for purposes of determining the state's inheritance tax base." (*Estate of Schmalenbach* (1975) 15 Cal.3d 102, 106 [123 Cal.Rptr. 490, 539 P.2d 58]; see *Estate of Koerner* (1975) 44 Cal.App.3d 447, 451 [118 Cal.Rptr. 752]; *Estate of Giolitti, supra,* 26 Cal.App.3d 327, 332; *Estate of Fabris* (1962) 200 Cal.App.2d 408 [19 Cal.Rptr. 397].)[3] Consequently, the Controller argues, since the inheritance tax on the bequest to pay inheritance tax is predicated upon the clear market value of that transfer, without reduction by federal estate taxes, and because there were sufficient residuary funds to pay the bequest of inheritance taxes, the court's order eliminating the inheritance tax upon the bequest to pay inheritance tax was improper; for, there was no abatement and there could be no abatement because the federal estate taxes could not be considered.

The executor states it is illogical and unfair to impose a theoretical bequest of tax, which does not in fact take place, simply because the federal estate tax which depleted the residue is not considered deductible for inheritance tax purposes. Moreover, he argues, because the bequest was not funded, there is no basis to impose the tax. He relies on the following excerpt from California Inheritance Tax Practice, *supra,* section 5.3, page 80, regarding the effect of abatement: "[a] problem arises when there is insufficient property in an estate from which bequests can be paid. . . . For inheritance tax purposes, whether the abatement is according to statute or pursuant to the decedent's will, the inheritance tax is computed only after the abatement. Therefore the taxable transfer limited to the property actually transferred, valued as of the date of the decedent's death."

Although facially persuasive, the Controller's contention is meritless in light of the nature of the state inheritance tax.

The California inheritance tax is not imposed upon the estate, but rather upon the testamentary transfer—the privilege of receiving it by testamentary devise or by inheritance. (*Estate of Varian* (1968) 264 Cal.App.2d 248, 251 [70 Cal.Rptr. 335]; *Estate of McLaughlin* (1966) 243 Cal.App.2d 516, 520 [52 Cal.Rptr. 543].) However, a beneficiary need not actually receive the funds to be taxed on them; for, "[i]t is the privilege of receiving and neither the property itself nor the actual receiving of it which is taxed." (*Estate of Varian, supra,* 264 Cal.App.2d at p. 252; *Estate of Koerner, supra,* 44 Cal.App.3d 447, 450;

---

[3]"Since the Legislature has the power to allow or to take away altogether the rights of testamentary disposition and of inheritance, it has the power to tax the privilege of receiving the property of the decedent. [Citations.]" (*Estate of Varian* (1968) 264 Cal.App.2d 248, 251-252 [70 Cal.Rptr. 335].) More specifically, "it is settled that the Legislature has the power to provide which deductions are allowable in arriving at the value upon which those beneficially interested must pay" (*Estate of Giolitti, supra,* 26 Cal.App.3d 327, 330), and thus "to declare by statute what burdens or encumbrances shall or shall not be excluded from computations by the inheritance tax appraiser. [Citations.]" (*Estate of Koerner, supra,* at p. 451.)

see also *Estate of Sagal* (1979) 89 Cal.App.3d 1003, 1011 [153 Cal.Rptr.128].) Consequently, the fact that the beneficiaries here did not actually receive the money bequested for the payment of state inheritance taxes because that money was applied by court order to partially satisfy the federal estate tax burden, is not controlling. For this does not necessarily negate the fact the money was theoretically "transferred" to the beneficiaries, "however ephemeral and intangible that 'transfer' may be characterized in a practical economic sense." (*Estate of Koerner, supra,* at p. 450; *Estate of Sagal, supra,* at p. 1011.) Thus, facially, the bequest to pay state inheritance taxes was "transferred" to the beneficiaries in a legal sense, although actual possession of the funds was immediately removed when the court ordered the federal estate taxes be paid out of the remaining residue. (Cf. *Estate of Koerner, supra,* at p. 450.) It even can be argued, since the payment of federal estate tax is not an allowable deduction in computing state inheritance tax, it logically follows it cannot be employed here to defeat the state inheritance tax due upon the bequest to pay state inheritance taxes.

■ However, "[o]ver the years, the courts have gradually moved toward a full acceptance of the modern view that in determining whether transfers are subject to inheritance tax, *the realities of substance control over the niceties of form, and that actual economic or beneficial interest,* and facts constituting the equivalent of ownership, *will control over the technicalities of the conveyancer's art.*" (23 Cal.Jur.3d, Death and Gift Taxes, § 14, p. 434, italics added, fns. omitted.) As so construed, the inheritance tax is a "net succession tax" levied on what a beneficiary receives after lawful burdens and deductions during probate (*Estate of Hite* (1911) 159 Cal. 392, 394 [113 P. 1072]; *Estate of Atwell* (1948) 85 Cal.App.2d 454, 460 [193 P.2d 519]), the amount of the tax being proportionate to the benefit received.) (*Estate of Rath* (1937) 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836].) ■ Accepting the concept of "beneficial succession" (see *Estate of Barter* (1947) 30 Cal.2d 549, 556-557 [184 P.2d 305]; see generally, *Estate of Miller* (1921) 184 Cal. 674, 678 [195 P. 413, 16 A.L.R. 694]; *Estate of Fabris, supra,* 200 Cal.App.2d 408, 411-412), we find the beneficiaries here "succeeded" to no beneficial interest from the bequest to pay state inheritance taxes which was properly abated in accord with the testatrix' intent (*infra*). This case is distinguishable from *Estate of Koerner, supra,* because there the payment of federal estate taxes from the residue partially benefited the residual beneficiaries challenging the imposition of state inheritance taxes upon that portion of the residue used to pay the federal estate taxes. Adopting the Controller's contention could potentially produce the untenable and absurd result of taxing one who takes nothing from the probated estate. (*Estate of Sagal, supra,* 89 Cal.App.3d 1003, 1013.)

Therefore, aided by the testatrix' express intent, we conclude the court properly abated the bequest to pay state inheritance taxes. The court's direction

created two distinct and separate bequests, to pay federal estate taxes (see *Estate of Sagal, supra,* 89 Cal.App.3d 1003, 1008, 1015), and state inheritance taxes (*Estate of Irwin, supra,* 196 Cal. 366, 375; *Estate of Nesbitt, supra,* 158 Cal.App.2d 630, 632; Cal. Admin. Code, tit. 18, § 13601.4), respectively. Although the abatement procedures set forth in Probate Code section 750 et seq. apparently do not apply to the payment of death taxes, those procedures nevertheless apply here since the direction of the testatrix evolved into the cited bequests. " 'Abatement of bequests' may be defined as a proportional diminution or reduction of bequests, when the probate estate is not sufficient to pay them in full. Thus, a bequest abates if there is a deficiency of assets, and the abatement takes place when the total amount of property described in a specific bequest exceeds that on hand at the time of the testator's death, as well as when the deficiency is caused by the existence of debts that must be paid before bequests. [Citation.]" (Cal. Inheritance Tax Practice, *supra,* § 13.19, p. 312; *Estate of Buck* (1948) 32 Cal.2d 372, 376 [196 P.2d 769].) ▮ "Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class" (Prob. Code, § 752), and equally so between all legacies of a certain class and cannot apply to only one of one class and one of another. (*Estate of Luckel* (1957) 151 Cal.App.2d 481, 493 [312 P.2d 24]; *Estate of Wever* (1936) 12 Cal.App.2d 237, 242 [55 P.2d 279].) ▮ Here, the testatrix' express intent was to pass her bequests free of any tax obligation to the respective recipients. By abating the bequest to pay state inheritance taxes in its entirety, thus eliminating the inheritance tax upon the bequest to pay inheritance tax, and applying those funds to partially satisfy the federal estate taxes due, the court properly maximized decedent's intent by making the specific bequests as free as possible of the death tax burden. Since the inheritance tax is computed only after abatement and the taxable transfer is limited to the property actually transferred valued as of the date of decedent's death, there is no inheritance tax due upon the completely abated bequest to pay state inheritance taxes. (See Cal. Inheritance Tax Practice, *supra,* § 5.3, p. 80.)

*Disposition:*

The order is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.